INHABITANTS OF MT. DESERT *vs.* INHABITANTS OF TREMONT.

Hancock.    Opinion May 31, 1883.

*Statute of limitation.  Arbitration and award.  Reference.  Practice.*

By the act of the legislature, setting off a portion of Mt. Desert and incorporating the same as the town of Tremont, the latter was holden to pay to the former a certain proportion of its liabilities, among which was a judgment recovered against it; in an action to recover the defendants' proportion of the same; *Held,* That the statute of limitations did not begin to run until payment of the judgment by the plaintiffs.

On a submission of "all demands between the parties" thereto, the award is no bar to a claim not in fact submitted or considered by the arbitrators.

ON REPORT.

This is the second time this case has been to the law court. See S. C. 72 Maine, 348.

Assumpsit to recover fifty-six hundredths of twelve hundred dollars, being the amount of a judgment paid by the plaintiff town to Daniel Kimball, June 1, 1876. The writ was dated September 7, 1877. The plea was the general issue, with brief statement setting up the statute of limitations; also that all demands between the parties were submitted to referees, prior to the commencement of this suit, and the referees had heard the parties and made their report to the Supreme Judicial Court, and that such report had been accepted and judgment rendered thereon.

The defendant town was formerly a part of the plaintiff town and was separated therefrom and incorporated in the name of the town of Mansel, by c. 92, special stat. 1848, and by a subsequent statute, the name was changed from Mansel to Tremont.

The following is the act of incorporation:

"Be it enacted by the senate and house of representatives in legislature assembled, as follows:

"Section 1. All that part of the town of Mt. Desert, in the county of Hancock, lying south of a line commencing at Andrew Fernald's north line on Somes' Sound; thence across the mountain to the head of Deming's Pond; thence continuing the same course to Great Pond; and thence across said pond to the southeast corner of lot number one hundred and fourteen, on a plan of said town by John S. Dodge; thence westerly on the south line of said lot number one hundred and fourteen, to Seal Cove Pond, and continuing the same course to the middle of said pond; thence northerly up the middle of Upper Seal Cove Pond to the head thereof, and continuing the same course to the south line of lot marked 'Reuben Noble,' on said plan; thence westerly on the south line of said last named lot to the sea shore, together with Moose Island, Gott's Island and Langley's Island, with the inhabitants thereon, is hereby set off from said town of Mt. Desert and incorporated into a separate town of Mansel, and vested with all the powers, privileges and immunities, and subject to all the duties and liabilities of other incorporated towns, agreeably to the constitution and laws of this state, and is classed in the same representative district as its inhabitants now are.

"Section 2. Said town of Mansel shall be holden to pay the said town of Mt. Desert such proportion of the debts and liabilities of the said town of Mt. Desert, beyond their resources now existing, and which may hereafter arise in consequence of any and all suits at law, now pending against or in favor of said town of Mt. Desert; and also assume the support of such proportion of all persons, supported as permanent or occasional paupers by said town of Mt. Desert, as the last valuation of that portion set off, hereby bears to the whole valuation of the town of Mt. Desert.

"Section 3. The inhabitants of the town of Mansel shall be held to pay all taxes which have been assessed upon them by the town of Mt. Desert and which remain unpaid at the time of the passage of this act; and also their just proportion of such state and county taxes as are already, or may be hereafter assessed and apportioned on the inhabitants of the town of Mt.

Desert, until the legislature shall lay a tax upon the town of Mansel.

"Section 4. The inhabitants of the town of Mansel shall be entitled to receive from said town of Mt. Desert their proportion of school money raised in said town of Mt. Desert, which has been or may be apportioned to the several school districts and parts of districts falling within the limits of the town of Mansel, as hereby incorporated.

"Section 5. It shall be the duty of the selectmen of the town of Mt. Desert, to make returns to the secretary of state, by the first day of February next, of the proportion of the state valuation of said town, which is set off by this act, and incorporated into the town of Mansel.

"Section 6. Any justice of the peace within said county of Hancock, may issue his warrant to any legal voter residing in said town of Mansel, directing him to notify the inhabitants thereof to meet at a time and place specified in said warrant, for the choice of town officers and to transact such business as other towns are authorized to do at their annual town meetings.

"Section 7. This act shall take effect and be in force, from and after its approval by the governor."

At the trial the plaintiff introduced the records and evidence in the case of *Daniel Kimball vs. Inhabitants of Mt. Desert*, by which it appeared that the cause of action in that suit was a levy upon the property of Daniel Kimball, April 22, 1848, to satisfy a judgment or warrant of distress from the court of county commissioners against the inhabitants of Mt. Desert. The defendants introduced in evidence, the agreement in writing signed by committees for and in behalf of their respective towns, December 30, 1851, by which all demands between the towns were submitted to the determination of John M. Hale, John West and Theodore C. Woodman in the manner stated in the opinion, also the record of the judgment rendered on their report.

*Hale and Emery*, for the plaintiffs, cited : *Wood* v. *Leland*, 1 Met. 387 ; *Thayer* v. *Daniels*, 110 Mass. 345 ; *Perkins* v. *Littlefield*, 5 Allen, 370 ; *Reeves* v. *Pulliam*, 7 Baxter (Tenn.), 119 ;

*Lytle* v. *Mehaffy*, 8 Watts (Pa.), 267; *Godfrey* v. *Rice*, 59 Maine, 308; *Kendall* v. *Bates*, 35 Maine, 359; *Bixby* v. *Whitney*, 5 Maine, 192; *King* v. *Savory*, 8 Cush. 309; *Hopson*, v. *Doolittle*, 13 Conn. 236; *Hastings* v. *Dickinson*, 7 Mass. 153; *Cuyler* v. *Cuyler*, 2 Johns. 186.

*A. P. Wiswell*, for the defendants.

This action is based upon an implied promise for contribution which the law presumes one, jointly liable to pay a debt, makes to the other, jointly liable, upon his payment of the debt. But the law never implies a promise when there is a liability created by express contract or by statute. *Expressum facit cessare tacitum*. Metcalf, Contr. 6. Here there was an express liability imposed by the statute. The liabilities of the old town remained the same, were not changed by the separation of a portion of its territory. *Windham* v. *Portland*, 4 Mass. 384; *Hampshire Co.* v. *Franklin Co.* 16 Mass, 86; *North Yarmouth* v. *Skillings*, 45 Maine, 142.

There can be, then, no implied promise or liability on the part of Tremont to pay any portion of the liabilities of Mt. Desert. But in this case, the act contained a provision by which Tremont was not made liable to creditors jointly with Mt. Desert or in any other manner, but was made liable to pay to Mt. Desert a certain proportion of the debts. It is claimed that this created an immediate liability on the defendant town to pay Mt. Desert its proportion of all the debts; that by a proper construction of the act of separation on account of the liabilities and resources of Mt. Desert should have been taken at that time and if there was an excess of debts then, Tremont was required to pay its proportion then. That Mt. Desert could then have maintained an action for such proportion. *Smith* v. *Pond*, 11 Gray, 234; *Turner* v. *Durgin*, 119 Mass. 507,

Consequently this action, commenced nearly thirty years after the right of action accrued, is barred by the statute of limitation.

Counsel further argued that the submission of all demands between the parties embraced the claim now in suit; and also that the burden was upon the plaintiff in this case, to show that

the liabilities of Mt. Desert at the time of the separation, were in excess of the resources, in order to entitle them to maintain any action against Tremont. *New Bedford* v. *Hingham*, 117 Mass. 445.

VIRGIN, J.    If the two members of a mercantile partnership, one of whom being a dormant partner, should divide their partnership effects and dissolve, and he in whose name the business had been done should thereafter continue business, at the old place, on his own account and the dormant member should remove his goods into a new store and there do business on his private account, and the written agreement of their dissolution should stipulate that the latter should repay to his former associate a certain proportion of all debts and liabilities of the firm which the latter should pay, the cause of action under the written stipulation would arise whenever payment should be made upon one of the debts and not when the written agreement was executed; and the statute of limitations would begin to run between the parties at the same time. *Perkins v. Littlefield*, 5 Allen, 370.    And if a creditor of the firm should keep his claim alive by reducing it to a judgment and the judgment should be renewed years after the original cause of action was barred, still the statute of limitations would not begin to run between the old partners under their express agreement, until some payment be made by the payee.    This is the familiar rule between co-sureties, joint contractors and principal and surety.    See authorities in plaintiffs' brief.    And we think the same principle is applicable to the case at bar; section two of the act of separation should receive the same construction as the supposed stipulation in the agreement for dissolution.    By the previous section, the defendants were to receive more than one-half of the valuation of Mt. Desert, and the legislature deemed it equitable that the new town should bear a corresponding proportion of the burdens of the old.    One of the liabilities ripened into a judgment against Mt. Desert in 1850 and was kept alive until 1876, when the plaintiffs satisfied it, the payment having been made within six years next before the date of this

writ. We fail to perceive upon what principle of law the action can be considered barred by the statute.

2. It is apparent from an inspection of the original award and the bill of particulars annexed thereto, that the claim involved in this action was not submitted to the referees; and hence, although the submission in terms embraced "all demands between the parties," this claim not having been considered by them, their award is no bar to this action. *Bailey* v. *Whitney*, 5 Maine, 192; *King* v. *Savoy*, 8 Cush. 309.

3. The certificate of the selectmen of Mt. Desert, dated December 20, 1852, cannot be considered as embracing the claim in suit; for it only professes to speak in relation to "bills for the year 1852." And if it might by its terms have covered this claim had it existed, it did not then exist.

4. By the terms of spec. st. 1848, c. 98, § 2, the defendants were holden to pay the plaintiffs "such proportion of the debts and liabilities of Mt. Desert, beyond their then existing resources, . . . . as the last valuation of the portion set off bore to the whole valuation of Mt. Desert," which is admitted to be in proportion of 56 to 100. We cannot think that the resources of Mt. Desert were not deducted out by the referees (one of whom was Mr. Woodman) when the judgment of October 5, 1852, was recovered. That was when a general settlement took place between the parties and it was only four years after the separation.

*Judgment for plaintiffs for $672 and interest from June 1, 1876.*

APPLETON, C. J., WALTON, PETERS and SYMONDS, JJ., concurred.