In the Matter of the Application of WILLIAM SPAULDING, a Taxpayer, Respondent, *v.* JOHN J. ARNOLD, as County Treasurer, Appellant.

In proceedings under the General Railroad Act, as amended in 1869 and 1871 (§ 4, chap. 907, Laws of 1869; chap. 283, Laws of 1871) by a taxpayer of a municipality which had issued its bonds in aid of the construction of a railroad, to compel the county treasurer to comply with the provisions of said act requiring him to invest and hold as a sinking fund, for the payment of said bonds, the taxes collected on the assessed valuation of the railroad in the municipality and paid over to said county treasurer, it appeared that during the years in question, there was an account on the said treasurer's books called a general fund, in which was carried items of money not otherwise especially appropriated, and that there was in said fund at all times since the taxes in question had been collected, a greater sum than the total amount of said taxes. It did not appear that any portion of the moneys so collected and paid over had ever been paid out. *Held*, it was not necessary that the particular moneys paid by the railroad company should be identified; that the presumption was they still remained in the hands of the county treasurer and were part of the general fund; and that, an order requiring their investment as prescribed by the statute, was proper.

Also, *held*, that, as there was a continuing duty in the county treasurer to make the application required, the Statute of Limitations did not apply. *Strough* v. *Bd. of Suprs.* (119 N. Y. 212), distinguished.

Also, *held*, it was not material that the county treasurer defendant did not receive all the moneys directly from the railroad company, but that a portion thereof was received by his predecessors in office, the same having been paid over to and being now held by him as treasurer.

*It seems* that as the taxes so collected are specifically appropriated, the question is not affected by the facts that the objects in each year for which the taxes of the years were raised did not include the creation of a sinking fund.

(Submitted December 5, 1890; decided January 13, 1891.)

Appeal from order of the General Term of the Supreme Court made the first Tuesday of June, 1889, which affirmed an order of the county judge of Niagara county, granting an application of the petitioner to compel the county treasurer to invest certain moneys.

This was a proceeding under section 4, chapter 907, Laws of 1869, as amended by chapters 283 and 925, Laws of 1871, to compel the county treasurer of Niagara county to invest the amount of taxes collected in the Fourth ward of the city of Lockport, of the Lockport and Buffalo Railroad Company, from the year 1877 to 1886 inclusive, and interest thereon in the bonds of the state or otherwise as provided in said act, as and for a sinking fund for the redemption and payment of bonds issued by the city of Lockport under the provisions of said act, to aid in the construction of said railroad.

The facts, so far as material, are stated in the opinion.

*John E. Pound* for appellant. The order should not have been made and should, therefore, be reversed. (*Wood* v. *Bd. Suprs.*, 50 Hun, 11.) All taxes collected over six years prior to the commencement of this proceeding, March 28, 1888, should have been deducted from the aggregate amount, as barred by the Statute of Limitations. (Code Civ. Pro. §§ 382, 414, 3334; *Wood* v. *Bd. Suprs.*, 50 Hun. 1; *Strough* v. *Bd. Suprs.*, 119 N. Y. 212.) The remedy as to past taxes is by suit. (*Wood* v. *Bd. Suprs.*, 50 Hun, 1.)

*S. Cady Murray* for respondent. The county judge of Niagara county is fully authorized and empowered by statute to make and enforce the order appealed from in this special proceeding, and that petition to the county judge for relief, is the proper and only remedy. (*Clark* v. *Sheldon*, 106 N. Y. 104.) All the taxes paid by the Lockport and Buffalo Railway Company upon the assessed valuation of its railroad, situate in the Fourth ward of the city of Lockport, to the several county treasurers of Niagara county in the several years from 1878 to 1886 inclusive, and aggregating the sum $1,251.87,

were, when they were so from time to time, paid to said county treasurer, appropriated by the legislature for a specific purpose, and such money could only be legally paid out or used by any such county treasurer in accordance with the provisions of chapter 907 of the Laws of 1869, as amended by chapter 925 of the Laws of 1871. (106 N. Y. 104.) None of the county treasurers of Niagara county have made a claim of title to the moneys received by them and paid by the Lockport and Buffalo Railway Company for taxes levied upon the valuation of its railroad situate in the Fourth ward of the city of Lockport, or by any act repudiated the trust imposed upon them severally by the Railroad Bonding Act. Each and every of such county treasurers " unreasonably refuses or neglects to comply " with the provisions of said act. Hence the Statute of Limitations has not commenced to run. (*Reitz* v. *Reitz*, 80 N. Y. 538; *Mabee* v. *Bailey*, 95 id. 206; *Camp* v. *Camp*, 3 N. Y. Supp. 335.)

PECKHAM, J. The referee has found that during the years in question there has been an account on the county treasurer's books called a general fund, for which money is raised by general tax from time to time by the direction of the board of supervisors of the county, and into which are carried items of money not otherwise especially appropriated, and from which are paid miscellaneous accounts and matters not otherwise generally mentioned in the annual tax levy, and that there has been in such fund at all times since any of the taxes upon the property of the railroad company in Lockport have been paid to the county treasurer, a greater sum than the total amount of such taxes so paid to the county treasurer, and that the money in that general fund amounted on the 1st day of July, 1888, to $9,985.19, and that amount was then held for and subject to the payment of miscellaneous demands and expenditures of the county not especially provided for by the board of supervisors.

From and inclusive of the year 1878 to and including the year 1886, taxes have been annually paid to the county treas-

urer by the railroad company upon the assessed valuation of its railroad in the city of Lockport, and there is no proof that any part of the sums of money so paid has ever been used for any purpose whatever. The law (Chap. 907, § 4 of the Laws 1869, as amended by chap. 283 of 1871) appropriates all such moneys to a specific purpose, and it is the duty of the county treasurer to set them apart for the purchase of bonds or for the sinking fund provided for in the statute. (*Matter of Clark* v. *Sheldon*, 106 N. Y. 104.)

Although appropriated by law to such purpose, the moneys have never in fact been used as the statute requires, and as there is no proof of their ever having been paid out, the presumption is that they are still in the hands of the county treasurer. Certainly we never should indulge in the presumption, without proof, that the moneys have in fact been used for some purpose other than that commanded by the statute. To use the moneys for any other purpose would be to misappropriate them, and proof of such misappropriation would have to be made before the fact could be found.

In this case we have a general fund into which the moneys have probably gone. When received by the different county treasurers they should have used the moneys as directed by the statute. This they have not done. The other demands upon the treasury have been met, and at all times there has been money in the general fund largely in excess of these moneys in question.

We think, as the evidence stands, it is entirely proper to assume that the general fund contains these moneys. If not, they have been misappropriated, and there is, as I have said, no evidence of that fact.

It is true it is stated that since 1877 the board of supervisors has made no provision in raising taxes for money to buy bonds or create a sinking fund under this statute. Hence a witness testified that the county treasurer had not, to his knowledge during that time, had in his hands any money or funds applicable to purchase bonds of the city, or to create a sinking fund. But it is plain this is simply a conclusion of

the witness based upon the claim that in raising the taxes for each year since 1877 no provision was made to raise enough so that the treasurer might set off the tax collected of the railroad company to purchase bonds or to create a sinking fund. As the law appropriated the money collected of the railroad company to such purchase, the failure to otherwise raise enough to provide for such payment would be wholly immaterial. The railroad company provided such a fund by paying the tax, and the money thus paid was *ipso facto* appropriated to the purchase of the bonds or the creation of the sinking fund. But the large excess at all times in the general fund above described, beyond the amount of the taxes paid by the railroad company to the treasurer shows that even if the amount paid by the company had been used by the treasurer for its proper purpose, there would still have been money in the treasury during all these times unappropriated to any special purpose and subject to be drawn upon for the payment of the debts of the county.

The fact that the objects in each year for which the taxes of the year were raised did not include the purchase of the bonds of the city, nor the creation of a sinking fund, is answered by the statute which itself appropriated specifically the tax paid by the railroad company to the purpose therein mentioned, and if enough was not raised beside, the only result might be that a deficiency of funds required for other purposes might arise. The excess, however, shows that even this fear would have been unfounded.

The funds thus paid into the county treasury having remained therein from the time of such payments up to the present moment, there has been a continuing duty resting upon the county treasurer to make the application provided for by the statute, and this duty continues up to the moment he discharges it by making the application which the statute commands. In such case the Statute of Limitations does not apply. Herein lies the clear distinction between this case and that of *Strough* v. *Board of Supervisors* (119 N. Y. 212). The county of Jefferson, through its county treasurer in that

case, instead of applying the moneys to the purchase of bonds
or the creation of the sinking fund, misappropriated them to
the payment of county and state taxes. From that moment
of misappropriation a cause of action arose in favor of the
town, and the Statute of Limitations commenced to run.
Here there has been no misappropriation. The fund still
remains in the hands of the county treasurer, and his duty to
invest it as the statute requires is still as imperative as it was
the first moment the fund came into his hands. It is not
necessary that the particular moneys paid by the railroad com-
pany should be identified. It is not a case of pursuing trust
funds in the ordinary acceptation of the term. The case bears
more resemblance to that of *Van Alen* v. *American National
Bank* (52 N. Y. 1), where the moneys had been deposited in
the bank and had been mingled with other moneys of the
depositor and of the bank, and of course the particular moneys
could not be identified. This court held it was a question of
title, and the funds being still in the defendant's hands it was
held liable to pay them over to the plaintiff.

Here the county treasurer has been paid certain sums of
money which he has not used, and which are still subject to
his disposal in a legal and proper manner. The court, under
the statute, may make an order that he shall dispose of the
money in the manner therein prescribed, and an action is not,
under these facts, the proper means of redress.

Neither is it important that the present defendant did not
receive all the moneys directly from the railroad company.
The other county treasurers, his predecessors in office, received
the moneys *ex officio*, and, failing to do with them as the
statute required, they paid them over to their successors in
office at the expiration of their respective terms, and the
defendant now holds them by virtue of his position as county
treasurer.

We think the order of the court below was right, and it
should be affirmed, with costs.

All concur.

Order affirmed.