(22 Misc. Rep. 610.)

WALSH v. RICHARDS.

(Oneida County Court.   February, 1898.)

1. TOWNS—RAILROAD AID—APPLICATION OF TAXES—PURCHASE OF BONDS.
    1 Rev. St. (Bank's 9th Ed.) p. 585, § 12, requires that all taxes, except school and road taxes, collected on railroad property in a town which has issued bonds to aid such railroad, shall be used by the county treasurer to purchase such bonds below par, or invested in a sinking fund for their redemption, and giving a taxpayer the right to compel such action by the county treasurer.   Held, that the county treasurer could be compelled to apply such taxes collected during the several previous years in the manner required, though the deficiency in the county fund thereby caused would necessitate a new levy for the ensuing year.

2. SAME—RAILROAD SINKING FUND.
    Nor is it an objection to such relief that the county treasurer found no "railroad sinking fund" on the books of the office, the statute not requiring county funds to be subdivided into special funds according to the purpose to which any portion is to be applied.

3. SAME.
    Nor will such relief be denied because the town failed to turn over its proper proportion of such taxes.

**4. SAME.**

Nor because no claim was made on the county treasurer during any of said years to have said taxes applied in the manner required.

**5. SAME.**

Nor because the identical funds so collected are not now in the county treasurer's hands.

**6. SAME—PRESUMPTIONS.**

Where the record shows that the balance of the general county fund during certain years exceeded the amount of taxes collected in a certain town, which taxes are required by the statute to be applied to the redemption of town bonds, it will be presumed that such amount still exists.

Application by William Walsh against William F. Richards, county treasurer of Oneida county, to compel the application of certain town taxes to the redemption of town bonds issued in aid of a certain railroad. Judgment for petitioner.

Geo. C. Morehouse, for petitioner.

J. K. O'Connor, opposed.

DUNMORE, J. This application is made under section 12 of the municipal law (1 Rev. St., Banks' 9th Ed., p. 585). That part which is material to this application reads as follows:

"If a town, village or city has outstanding unpaid bonds, issued, or substituted for bonds issued, to aid in the construction of a railroad therein, so much of all taxes as shall be necessary to take up such bonds, except school district and highway taxes, collected on the assessed valuation of such railroad in such municipal corporation, shall be paid over to the treasurer of the county in which the municipal corporation is located. Such treasurer shall purchase with such moneys of any town, village or city, such bonds, when they can be purchased at or below par, and shall immediately cancel them in the presence of the county judge. If such bonds cannot be purchased at or below par, such treasurer shall invest such money in the bonds of the United States, of the state of New York, or of any town or village or city of such state, issued pursuant to law; and shall hold such bonds as a sinking fund for the redemption and payment of such outstanding railroad aid bonds. If a county treasurer shall unreasonably neglect to comply with this section, any taxpayer of the town, village or city having so issued its bonds may apply to the county judge of the county in which such municipal corporation is situated, for an order compelling such treasurer to execute the provisions of this section."

This act has been frequently construed by the courts, and the objections raised by the answer are, I think, covered by the decision in Clark v. Sheldon, 106 N. Y. 104, 12 N. E. 341, in which the court said:

"It is no answer for the treasurer to say that, if he should set aside these taxes for a sinking fund, there would be a deficiency in other funds, and that he may not have money enough to pay the obligations of the county to the state and to the county officials and county creditors. He has no right to use the money, produced by these taxes, to discharge any of these obligations. The law has appropriated it for a specific purpose, and it is his duty to apply it to that purpose."

Upon the second appeal of the same case to the court of appeals (134 N. Y. 333, 32 N. E. 23) it was held that:

"All taxes, except school and road taxes, collected in any town on the assessed valuation of any railroad for which said town has issued or shall issue bonds, shall be paid over to the treasurer of the county in which said town lies. And it is made the duty of the treasurer with such taxes to purchase the bonds of said town, or to otherwise invest the same, and hold the investment as a sinking fund for the ultimate redemption and payment of said bonds. In case any county treasurer shall unreasonably refuse or neglect to comply with the provi-

sions of the act, any taxpayer of the town is authorized to apply by petition to the county judge for an order compelling said treasurer to execute the law, and it is made the duty of the county judge in a proper case to grant such an order. It is plain that neither the town, nor the county within which it lies, nor any officer or citizen thereof, has any power or authority over the disposition of the taxes mentioned in the act that come into the treasurer's hands. The county treasurer, in his relation to these taxes, is not the agent of the county or the town. The supervisors have no jurisdiction over the fund, and cannot legislate concerning it, nor direct or control the action of the county treasurer with reference to it. Neither can the town, through its officers or its town meeting, change the direction of the fund, or cause it to be applied to any purpose except that named in the law; and any taxpayer has a right as against the town and all other taxpayers therein to have the fund applied to the purposes stated, and to institute proceedings to that end. If, at the commencement of such proceedings, such taxes are in the hands of the county treasurer, no power exists to relieve him from the performance of the duty devolved upon him except in the legislature of the state; and consequently it cannot be a defense for him to say that he has paid the taxes over to any officer of the town, or that the town has had the benefit of it in its application to town purposes."

The case of Spaulding v. Arnold, 125 N. Y. 194, 26 N. E. 295, was a similar proceeding against the county treasurer of Niagara county. Nine years' taxes were involved. It appeared that at all times during the nine years the balance remaining in the general funds in the county treasurer's hands had exceeded the amount of the railroad taxes in question. The court of appeals held that, as the balance of money in the county treasurer's hands at all times exceeded the amount of railroad taxes involved, the presumption was that said railroad taxes were still in the county treasurer's hands.

"Certainly," the court says, "we never should indulge in the presumption, without proof, that the moneys have in fact been used for some purpose other than that commanded by the statute. To use the moneys for any other purpose would be to misappropriate them, and proof of such misappropriation would have to be made before the fact could be found. * * * We think, as the evidence stands, it is entirely proper to assume that the general fund contains these moneys. * * * The funds thus paid into the county treasury having remained therein from the time of such payments up to the present moment, there has been a continuing duty resting upon the county treasurer to make the application provided for by the statute; and this duty continues up to the moment he discharges it by making the application which the statute commands. * * * It is not necessary that the particular moneys paid by the railroad company should be identified. * * * Here the county treasurer has been paid certain sums of money which he has not used, and which are still subject to his disposal in a legal and proper manner. The court, under the statute, may make an order that he shall dispose of the money in the manner therein prescribed, and an action is not, under these facts the proper means of redress. Neither is it important that the present defendant did not receive all the moneys directly from the railroad company. The other county treasurers, his predecessors in office, received the moneys ex officio; and, failing to do with them as the statute required, they paid them over to their successors in office at the expiration of their respective terms, and the defendant now holds them by virtue of his position as county treasurer."

The order directing the county treasurer to purchase bonds to the amount of the taxes, or invest that amount in a sinking fund, was therefore affirmed.

The above adjudications so clearly point out the way that, in view of the facts conceded to exist in this proceeding, it is hardly possible to go astray. The petitioner is a taxpayer of the town of Bridgewater, and its present supervisor. I find no statute which makes

any of the county funds in this county a special fund, or which requires the county moneys to be subdivided according to the purpose to which any portion is to be applied.    The present system of bookkeeping was adopted by the county treasurer at the request of the board of supervisors in 1867 (Journal 1867, p. 31), and seems to have been followed since that time.    I find no statute authorizing or requiring the board of supervisors to prescribe any particular method.    All of the county moneys of this county raised by general taxation, therefore, belong to and form a part of the general fund.

An examination of the journals of the board of supervisors in evidence shows that at all times during the years 1891 to 1896, inclusive, the balance of the general fund in the county treasurer's hands has exceeded the sum of $2,578.10, the amount of money paid to the county treasurer during that period by the railroad in question as taxes levied upon lands in said town of Bridgewater.    Under the authority of Spaulding v. Arnold, it must be presumed that that fund is still in his hands, and must be applied as the statute directs.    It appears that on March 1, 1890, there was a bonded debt of the town of Bridgewater, issued in aid of said railroad, to the amount of $1,500, which, with interest, amounts to upward of $2,060.43.    The Oneida county treasurer received from said railroad company from 1891 to 1896, inclusive, in taxes paid by said railroad company, assessed upon its property in said town, the sum of $2,060,43, exclusive of the town's share of said taxes.    I am therefore of the opinion that the county treasurer should be directed to purchase bonds of the town of Bridgewater, issued by said town, to aid in the construction of the Utica, Chenango & Susquehanna Valley Railroad, to the amount of $2,060.43, provided the same can be purchased at or below par, and cancel the same as required by law.    If the same cannot be purchased at or below par, said county treasurer should be directed to invest said sum in the bonds of the United States, of the state of New York, or of any town or village or city of said state issued pursuant to law, and hold such bonds as a sinking fund for the redemption and payment of such outstanding railroad bonds.    An order may be prepared accordingly.    Ordered accordingly.