THE COUNTY OF BURLEIGH, North Dakota, a Public Corporation, v. THE COUNTY OF KIDDER, North Dakota, a Public Corporation.

(125 N. W. 1063.)

**Limitation of Actions — Specialty Created by Statute — County Debts.**

1. An action against a county to enforce a liability arising from an indebtedness of plaintiff county, charged upon the defendant county by an act of the legislature segregating from plaintiff county a portion of its territory, and annexing such territory to defendant county, is upon a specialty created by the statute, and is not within the provisions of the statute of limitations of this state.

Note. —The question of the liability for debts of territory annexed to a county, city, or other municipality is the subject of a note in 27 L.R.A.(N.S.) 1147, and

**Limitation of Actions — Creation of Fund Essential to Pleading of Statute.**

2. A county cannot plead limitation to an action against it to enforce an obligation payable from a particular fund, without first showing that it has provided such fund.

**Division of County — Apportionment of Debt — Legislative Rule Exclusive.**

3. Where a county is divided, and the detached territory is annexed to another county, the rule for the division and apportionment of the debts between such county and the county to which the detached territory is annexed belongs exclusively to the legislature, and not to the courts; and when the legislature has determined how the debts shall be apportioned, the courts cannot interfere.

**Pleas of Laches.**

4. For reasons stated in the opinion, *held,* defendant county cannot successfully invoke the doctrine of laches as a defense.

Opinion filed March 19, 1910.

Appeal from District Court, Burleigh county; *W. H. Winchester, J.*

Action by Burleigh County against Kidder County. Judgment for plaintiff, and defendant appeals.

Affirmed.

*Joseph W. Walker,* for appellant.

Appellant being ultimately liable on the obligation, statute began to run when respondent paid it. State v. Baker County, 24 Or. 141, 33 Pac. 530; Frank v. Brewer, 54 Hun, 633, 26 N. Y. S. R 590, 7 N. Y. Supp. 182; Barnsback v. Reiner, 8 Minn. 59, Gil. 37; Richter v. Henningsan, 110 Cal. 530, 42 Pac. 1077; Mt. Desert v. Tremont, 75 Me. 253.

Statute of limitations applies to counties. 19 Am. & Eng. Enc. Law, 2d ed. p. 191. It is a meritorious plea. Wheeler v. Castor, 11 N. D. 347, 61 L.R.A. 746, 92 N. W. 381; Trowbridge v. Schmidt, 82 Miss. 475, 34 So. 84.

*R. N. Stevens,* State's Attorney, and *Geo. W. Newton,* for respondent.

---

the authorities there reviewed show that, as a general rule, in the absence of statute or constitutional provision to the contrary, such territory is liable for its proportionate share of the existing indebtedness.

The broader question of the legal results of change of county boundaries and of the erection of a new county out of part of an old one is considered in a note in 85 Am. Dec. 100.

Legislature may impose burdens upon counties. Laramie County v. Albany County, 92 U. S. 307, 23 L. ed. 552; Guilder v. Dayton, 22 Minn. 366; State ex rel. Slipp v. McFadden, 23 Minn. 40; State ex rel. Atty. Gen. v. Pawnee County, 12 Kan. 426; Re Division of Howard County, 15 Kan. 194; Sedgwick County v. Bunker, 16 Kan. 498; McDonald v. Maddux, 11 Cal. 187; State ex rel. Police Comrs. v. County Ct. 34 Mo. 546; Depere v. Bellevue, 31 Wis. 120, 11 Am. Rep. 602; Stone v. Charlestown, 114 Mass. 214.

Trustee of a direct trust, when sued by beneficiary, cannot plead statute of limitations. Von Hoffman v. Quincy, 4 Wall. 554, 18 L. ed. 410; Lincoln County v. Luning, 133 U. S. 529, 532, 33 L. ed. 766, 768, 10 Sup. Ct. Rep. 363; Parish School Directors v. Shreveport, 47 La. Ann. 1310, 17 So. 823; Maenhaut v. New Orleans, 2 Woods, 108, Fed. Cas. No. 8,939; In Bullard v. Bell, 1 Mason, 243, Fed. Cas. No. 2,121.

Where a statute expressly enjoins a duty, such duty cannot be excused by statute of limitations. Coster v. Murray, 5 Johns. Ch. 522; Oliver v. Piatt, 3 How. 409, 11 L. ed. 657; Lewis v. Hawkins, 23 Wall. 119, 23 L. ed. 113; Rush County v. State, 103 Ind. 497, 3 N. E. 165; State ex rel. Hord v. St. Joseph County, 90 Ind. 359; Harrodsburg v. Harrodsburg Educational Dist. 9 Ky. L. Rep. 605, 7 S. W. 312; Underhill v. Sonora, 17 Cal. 173; Union P. R. Co. v. Durant, 95 U. S. 576, 24 L. ed. 391; State ex rel. Hudson v. Trammel (Mo.) 11 S. W. 747; Sawyer v. Colgan, 102 Cal. 283, 36 Pac. 580, 834; State ex rel. Davis v. Lincoln County, 23 Nev. 262, 45 Pac. 982.

Not until funds are in the treasury, properly applicable, will the statute begin to run. State ex rel. Davis v. Lincoln County, supra; Spaulding v. Arnold, 125 N. Y. 194, 26 N. E. 295; Sawyer v. Colgan, supra; Gasquet v. Directors of City Schools, 45 La. Ann. 342, 12 So. 506; King Iron Bridge & Mfg. Co. v. Otoe County, 124 U. S. 459, 31 L. ed. 514, 8 Sup. Ct. Rep. 542.

CARMODY, J. The plaintiff commenced this action September 5, 1907, to recover a judgment against the county of Kidder, adjudging that said county is indebted to it for a just and equitable proportion of the bonded indebtedness of Burleigh county existing on the 10th

day of March, 1885, and based upon the assessment in said Burleigh county for the year 1884, and the amount of such indebtedness under the provisions of the special acts, chapters 23 and 24, passed by the legislature of Dakota territory March 10, 1885, segregating from Burleigh county townships 137–144, inclusive, in range 74, west of the fifth principal meridian, and annexing them to Kidder county. From a judgment in favor of plaintiff, defendant appeals and desires a review of the entire case in this court.

The facts necessary to a decision of this case are as follows: In the year 1873 plaintiff was organized as a county. In the year 1880 defendant was organized as a county. Prior to the 10th day of March, 1885, the county of Burleigh included within its boundaries townships 137–144, inclusive, north of range 74. That on the 10th day of March, 1885, the legislature of the territory of Dakota, by an act entitled "An Act to Define the Boundaries of Kidder County," being chapter 23 of the Special Laws of 1885, segregated such townships from the county of Burleigh, and included them within the county of Kidder, and that since that time they have continued to be, and now are, a part of the county of Kidder. That on the 10th day of March, 1885, the legislature passed an act entitled "An Act to Amend an Act Entitled 'An Act Defining the Boundaries of Kidder County,'" being chapter 24 of the Special Laws of 1885, which act, as far as material here, is as follows:

"Section 1. That the portion of Kidder county segregated from the said Burleigh county, lying in range 74 west, shall not be released from its just and equitable proportion of the bonded indebtedness of said Burleigh county, at the date of the passage of this bill, and that said county of Kidder shall assume and pay said indebtedness.

"Sec. 2. That within sixty days after the passage and approval of this act, the county commissioners of said Kidder county shall meet the county commissioners of Burleigh county, in the city of Bismarck, and the said commissioners of the two counties shall constitute a joint board of commissioners whose duties it shall be to ascertain the amount of the bonded indebtedness to be assumed by the county of Kidder, . . . the assessment of Burleigh county for the year eighteen hundred eighty-four being taken as the basis of valuation, and when so ascertained the commissioners of said county of Kidder shall, and are hereby authorized, to execute and deliver to the board of

county commissioners of Burleigh county, for such share of the bonded indebtedness so ascertained, bonds of the county of Kidder with interest coupons attached, bearing the same rate of interest, due and payable at the same time as the bonds of Burleigh county, against which they are issued."

That the total valuation of all property in Burleigh county for the year 1884, as shown by the assessment for that year, was the sum of $3,079,253, and that the total valuation of all property in said townships 137–144, both inclusive, for the year 1884, as shown by the assessment in said Burleigh county for such year, was the sum of $48,250, and that the total of the bonded indebtedness of Burleigh county on the 10th day of March, 1885, was the sum of $114,867.50. That all of said bonded indebtedness was paid by respondent on and prior to July 1, 1894. That no part of said bonded indebtedness was ever paid or assumed by said Kidder county, nor were any bonds for such share of the bonded indebtedness issued by said Kidder county, nor has Kidder county ever levied or collected any tax to pay its proportion of such bonded indebtedness, nor any part thereof. That on the assessed valuation of Burleigh county for the year 1884 the proportion of the bonded indebtedness of said Burleigh county to be assumed by Kidder county was $1,803.15, on the 10th day of March, 1885, and the interest thereon to November 1, 1908, was $2,269.89, making a total sum of $4,073.04, for which sum the respondent had judgment. That no joint meeting of the county commissioners of the said two counties of Kidder and Burleigh has ever been held for the purpose designated in said chapter 24, or at all, except that pursuant to a notice by the county auditor of Burleigh county the boards of county commissioners of Kidder county and Burleigh county met at the courthouse in the city of Bismarck on the 2d day of September, 1895, in the matter of the transfer of range 74 from Burleigh county to Kidder county, but no agreement was arrived at, and nothing was done. The minutes only show that the matter was discussed at length, after which the boards adjourned until September 3, 1895. In the fall of 1895 the respondent was claiming from appellant the sum of $2,655.57 on account of the segregation of the territory hereinbefore described from Burleigh county and the annexation of said territory to Kidder county.

The minutes of the commissioners of appellant, Kidder county, show that on the 7th day of October, 1895, a motion was passed instructing the county attorney of Kidder county to meet with the county commissioners of Burleigh county October 8, 1895. Nothing, however, was done in the matter. On the 8th day of January, 1896, the board of county commissioners of Kidder county passed a resolution, expressly denying that appellant was indebted to respondent in any sum of money whatever on account of said segregation and annexation, but, as a matter of compromise and to avoid litigation, offered to pay respondent the sum of $600. That there was in the year 1884, in said Burleigh county and in the townships segregated therefrom and annexed to said Kidder county, a large number of odd-numbered sections of land, as shown by said assessment, within the place limits of the grant to the Northern Pacific Railway Company, made by the act of Congress approved July 2, 1864, and upon which the survey fees had not been paid to the United States government. That the assessed valuation of Burleigh county for the year 1884, aside from the assessment on such odd-numbered sections of land, was the sum of $1,890,204. That the assessed valuation for the year 1884 of the townships segregated from the county of Burleigh and annexed to the county of Kidder, aside from the assessment of the said odd-numbered sections, was the sum of $1,-900. That the odd-numbered sections in Burleigh county, and in the townships segregated from Burleigh county and annexed to Kidder county, were patented to the Northern Pacific Railroad Company by the patent from the United States government in the years 1895 and 1896. All of the evidence regarding the odd-numbered sections was objected to by respondent as irrelevant and immaterial.

At the close of respondent's case, appellant made a motion to dismiss the action for the following, among other, reasons: "That it affirmatively appears, and there is no evidence tending to show to the contrary, that the cause of action set out, or purported to be set out, in plaintiff's complaint accrued more than ten years prior to the commencement of this action." At the close of the testimony appellant made the following motion: "Both parties having rested, the defendant moves the court that this action be now dismissed, upon the ground that it is admitted by both parties hereto of record that all of the outstanding indebtedness of Burleigh county, existing on March 10, 1885,

was paid and satisfied as the same matured, both coupons and bonds, and the last of said bonds and coupons having been matured more than six years, and more than ten years, prior to the commencement of this action."

The following are the ultimate facts claimed by the appellant to be established by the evidence, and upon which it relies for reversal: (1) That the cause of action set forth in the respondent's complaint did not accrue within ten years prior to the commencement of this action. (2) That the total valuation of Burleigh county in the year 1884, as shown by the assessment of said county for that year, was the sum of $1,890,204, and that the total valuation of all property in said townships 137–144, both inclusive, in said range 74, in the year 1884, as shown by the assessment of said Burleigh county for said year, was the sum of $1,900. (3) That the valuation of the property in said townships so set off to said Kidder county, in the assessment of said Burleigh county for the year 1884, is (by computation) 0.1006 per cent of the valuation of all the prop-. erty in said Burleigh county, in the assessment of said county for said year. (4) That the sum of $115.55 is (by computation) the just and equitable portion of the bonded indebtedness of Burleigh county at the date of the passage of said acts, *viz.,* March 10, 1885; that the sum of $186.50 is the interest thereon, at the rate of 7 per cent per annum from said date to November 1, 1908, and that the gross amount of said sums is $301.05, and that the said county of Kidder was justly indebted to the said county of Burleigh, if in any amount whatever, on November 1, 1908, in the said sum of $301.05, and no more.

But three questions are to be determined on this appeal: (1) Whether the statutes of limitations ran against the county of Burleigh; (2) whether the odd-numbered sections of land in the county of Burleigh, and in that portion segregated from the county of Burleigh and annexed to the county of Kidder, should be considered in fixing the assessed valuation of Burleigh county in the year 1884; (3) laches on the part of respondent.

Chapter 28, Rev. Codes 1877, which were in force on March 10, 1885, provides: "For county sinking fund such rate as in the estimation of the board of county commissioners will pay one year's interest on all the outstanding debt on the county, with fifteen per cent on

20 N. D.—3.

the principal." From the foregoing it appears that the general provisions of the statutes then existing provided for the raising of funds to meet the indebtedness of counties. It is elementary that like or similar provisions must be retained as long as the indebtedness continues. Mobile v. Watson, 116 U. S. 289, 29 L. ed. 620, 6 Sup. Ct. Rep. 398; Von Hoffman v. Quincy, 4 Wall. 535, 18 L. ed. 403. The statute of limitations is what is known in law as a statute of repose. It is a statute enacted as a matter of public policy, to fix a limit in which an action must be brought or the obligation will be presumed to have been paid. The statute is intended to run only against those who are neglectful of their rights, and fail to use reasonable and proper diligence in the enforcement thereof. They are based on the presumption of law that, from the lapse of time, it is fair to presume that the debt has been paid. Barnes v. Turner, 14 Okla. 284, 10 L.R.A.(N.S.) 478, 78 Pac. 108, 2 A. & E. Ann. Cas. 391.

In the case at bar the county commissioners of appellant were, within sixty days after March 10, 1885, required to meet the county commissioners of respondent in the city of Bismarck and ascertain the amount of the bonded indebtedness to be assumed by appellant, and executed and delivered to the board of county commissioners of respondent bonds of appellant county of Kidder, with interest coupons attached, bearing the same rate of interest, due and payable at the same time as the bonds of Burleigh county, against which they are to be issued. To provide a fund for the payment of such bonds and interest when due, the board of county commissioners of appellant county were required to create a county sinking fund, and levy a sufficient tax on the taxable property in the county to pay one year's interest on the bonds, with 15 per cent on the principal, and make such levy each year until the bonds and interest were paid. It is undisputed that appellant neither executed nor delivered the bonds, and never made any provision for the payment of the amount of the bonded indebtedness to be assumed by it or the interest thereon.

The respondent in this action contends that chapter 24, Laws 1885, contains special provisions that take this claim out of the bar provided by the general statute of limitations. It is by virtue of the provisions of this act that respondent seeks to maintain this action against appellant. No action could be maintained against appellant upon the

bonds issued by respondent, except by force of the act of the legislature approved March 10, 1885. The liability or obligation of appellant to pay its proportionate share of the bonded indebtedness of respondent could not arise except by legislative action. Under the provision of the act segregating townships 137–144, inclusive, range 74, from Burleigh county and annexing them to Kidder county, appellant assumed and agreed to pay its proportionate share of the bonded indebtedness of respondent on March 10, 1885. Its liability was fixed and determined by said act. The bonded indebtedness was originally to be paid by Burleigh county. Kidder county, except for the provisions of the statute referred to, could not be held answerable for the debt, or any portion thereof. This debt or obligation is in the nature of a specialty, and in our opinion is not barred by the statute of limitations. In 1 Wood on Limitations, § 39, it is said that "the test [by which to determine] whether a statute creates a specialty debt or not might be said to be whether, independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether, independently of the statute, a right of action exists for the breach of the duty or obligation imposed by the statute. If so, then the obligation is not in the nature of a specialty, and is within the statute; . . . but, if the statute creates the duty or obligation, then the obligation thereby imposed is a specialty, and is not within the statute." Apply this test to the present case. Independently of the statute, the law does not imply any obligation upon appellant, Kidder county, to pay the debt, or any part thereof; nor, independently of the statute, could any right of action be maintained by respondent against appellant. But the statute does create the duty or obligation on appellant to pay its proportionate share of such bonded indebtedness, and the obligation thereby imposed is a specialty, and is not within the provisions of the statute of limitations pleaded herein. The cases, although different in their facts, are all more or less akin in principle to the present case, and the general trend of all analogous cases is substantially in the same vein, and is in accord, with the views we have expressed. Robertson v. Blaine County, 47 L.R.A. 459, 32 C. C. A. 512, 61 U. S. App. 242, 90 Fed. 63; Bullard v. Bell, 1 Mason, 243, Fed. Cas. No. 2,121; Van Hook v. Whitlock, 3 Paige, 409; Cowenhoven v. Middlesex County, 44 N. J. L. 232; State v.

Baker County, 24 Or. 141, 33 Pac. 530; Pease v. Howard, 14 Johns. 479; Lane v. Morris, 10 Ga. 162; Higby v. Calaveras County, 18 Cal. 176; Cork & B. R. Co. v. Goode, 13 C. B. 826; Barnes v. Turner, supra.

The courts are practically unanimous in holding that the statute of limitations does not begin to run against a warrant issued by a municipal, or quasi municipal, corporation, and payable out of the fund, until the corporation has provided a fund from which it may be paid. Wetmore v. Monona County, 73 Iowa, 88, 34 N. W. 751; Gasquet v. Directors of City Schools, 45 La. Ann. 342, 12 So. 506; Fernandez v. New Orleans, 46 La. Ann. 1130, 15 So. 378; Apache County v. Barth, 6 Ariz. 13, 53 Pac. 187; Potter v. New Whatcom, 20 Wash. 589, 72 Am. St. Rep. 135, 56 Pac. 394; Brannon v. White Lake Twp. 17 S. D. 83, 95 N. W. 284; Lincoln County v. Luning, 133 U. S. 529, 33 L. ed. 766, 10 Sup. Ct. Rep. 363; Freehill v. Chamberlain, 65 Cal. 603, 4 Pac. 646; State ex rel. Davis v. Lincoln County, 23 Nev. 262, 45 Pac. 982; Sawyer v. Colgan, 102 Cal. 283, 36 Pac. 580, 834; Meyer v. San Francisco, 150 Cal. 131, 10 L.R.A. (N.S.) 110, 88 Pac. 722; Greer County v. Clarke & Courts, 12 Okla. 197, 70 Pac. 206; Spaulding v. Arnold, 125 N. Y. 194, 26 N. E. 295; King Iron Bridge & Mfg. Co. v. Otoe County, 124 U. S. 459, 31 L. ed. 514, 8 Sup. Ct. Rep. 582; Stewart v. Custer County, 14 S. D. 155, 84 N. W. 764; Atchison v. Leu, 48 Kan. 138, 29 Pac. 467; School Dist. No. 5 v. First Nat. Bank, 63 Kan. 668, 66 Pac. 630; Hubbell v. South Hutchinson, 64 Kan. 645, 68 Pa. 52.

Cork & B. R. Co. v. Goode, supra, as an action of debt by a railway company against one of its members, for cause, under the authority of an act of Parliament, and the plea was that such cause of action did not accrue within six years, and this plea was confronted by a demurrer. Chief Justice Jervis said: "I think it is an action upon statute. . . . But for the act of Parliament, no action could be brought by the company against one of its own members. This, therefore, is an action brought in respect of a liability created by statute, and therefore is an action founded upon the statute, and the plea which relies upon the six years' limitation is no answer to it." In Lane v. Morris, supra, a stockholder pleaded the statute of limitations in an action brought against him upon his liability for the debts of a corporation.

The court held that the cause of action was founded on the statute creating his liability, and numerous authorities were there cited to sustain the position that an action of debt, founded upon a statutory liability, has never been considered as being within the statute of limitations of England or of like statutes in this country, but that such statutory liability has always been regarded in the nature of a specialty. In the course of the opinion the court said: "There can be no doubt that the liability of the defendant, as a stockholder, for the ultimate redemption of the bills of the bank, is created by the eleventh section of the statute incorporating the Planters' & Mechanics' Bank of Columbus. Without that section in the act he would not be liable to the plaintiff as a holder of the bills of the bank." In Bullard v. Bell, supra, Mr. Justice Story held that the statute of New Hampshire did not apply as a bar to an action of debt against a stockholder of a bank, under the provisions of its charter imposing a personal responsibility upon the shareholder for the notes of the institution in case they should be dishonored. In Angell on Limitations, p. 80, it is said that "where the liability of the defendant is created, not merely by the act of the parties, but by the positive requisitions of a statute, the plaintiff is not barred." The facts alleged in the complaint bring the case at bar within the general rule that, when payment is provided for out of a particular fund, or in a particular way, the debtor cannot plead the statute of limitations without first showing that a particular fund has been provided, or that the particular method prescribed by the statute has been complied with. This general principle is clearly stated in Lincoln County v. Luning, supra. In Hubbell v. South Hutchinson, supra, the court said: "It is the settled law of this state, however, that the statute of limitations does not run in favor of a municipal, or quasi municipal, corporation upon its outstanding obligations until the corporation has provided a fund with which payment thereof may be made." We do not think the cases cited by appellant are in point. While some of them hold, apparently, contrary to the views herein expressed, it will be observed that there are particular circumstances which tend to distinguish them and take them out of the general rule.

In Mt. Desert v. Tremont, 75 Me. 252, by an act of the Maine legislature passed in 1848, the township of Mt. Desert was divided, and the defendant formed a separate township. By the terms of the act

each township was to receive a proportion of the town property, of the money on hand, and pay its proportion of the liabilities and debts against the town of Mt. Desert. In the act it was also provided that the defendant should pay its share of any of the liabilities of the said township of Mt. Desert now existing, and which may hereafter arise in any and all suits at law, now pending against or in favor of said town of Mt. Desert. On April 22, 1848, one Daniel Kimball was obliged to pay a judgment against the inhabitants of Mt. Desert, he being a resident of the town, and his property having been levied upon. In 1850 he obtained a judgment against the township of Mt. Desert for the amount he had paid, and in 1876 it was paid him by the township of Mt. Desert. On September 7, 1877, the township of Mt. Desert commenced the action against the defendant to collect its proportion of the amount of the judgment paid to Daniel Kimball. The defendant pleaded the statute of limitations, which plea was overruled, the court saying: "The payment having been made within six years next before the date of this writ, we fail to perceive upon what principle of law the action can be considered barred by the statute." By the common law of the New England states, derived from immemorial usage, the estate of any inhabitant of a county, town, territorial parish, or school district is liable to be taken on execution of a judgment against the corporation. 15 Am. & Eng. Enc. Law, p. 1067. In Trowbridge v. Schmidt, 82 Miss. 475, 34 So. 84, which was a petition for a writ of mandamus by Smith against Trowbridge, mayor, the municipal board allowed Smith $500 for damages to his real estate in grading her streets. The mayor refused to sign the warrant, claiming that when Smith filed his claim for allowance with the board it was barred by limitation. The court sustained his plea. This was a claim for unliquidated damages for tort, and would not come within any of the principles herein stated.

Appellant cites 19 Am. & Eng. Enc. Law, 2d ed. p. 191, and notes. One of the cases cited in note in 19 Am. & Eng. Enc. Law, 2d ed. p. 191, was where an action was brought by the city to determine adverse claims to real estate; the court held that the statute of limitations ran against the city. In another case cited in said note (Harrison County v. Dunn, 84 Iowa, 328, 51 N. W. 155), the court held that an action against the estate of an insane person to recover the cost of sup-

port furnished to him while an inmate of the state asylum, brought in behalf of a county, is subject to the bar of the statute; statutes having been enacted making a statute of limitations applicable to suits by state. In all the cases cited in the said note there are circumstances that distinguish them from the case at bar.

Appellant contends that there was an error in the assessment of Burleigh county for the year 1884, on account of the odd-numbered sections within the land grant to the Northern Pacific Railroad Company having been assessed, the title to which land had not yet passed from the United States. It is a matter of history that until the decision of the Supreme Court, in the case of the Northern P. R. Co. v. Traill County (Northern P. R. Co. v. Rockne) 115 U. S. 600, 29 L. ed. 477, 6 Sup. Ct. Rep. 201, which was decided December 7, 1885, it was generally believed throughout the territory that the railroad land grant was subject to taxation, and the taxing officials acted on such understanding. However, it is immaterial in this case. The assessment for the year 1884 was a public record at the time the special acts in question were approved, and became laws on March 10, 1885. The power of the legislature over a county is absolute except as restrained by the Constitution. State ex rel. Slipp v. McFadden, 23 Minn. 40; Richland County v. Lawrence County, 12 Ill. 1; State ex rel. Atty. Gen. v. Pawnee County, 12 Kan. 426. Where a county is divided, the rule for the division and apportionment of the debts and property between such county and the detached territory belongs exclusively to the legislature, and not to the courts; and, when the legislature has determined how the debts and property shall be divided and apportioned, the courts cannot interfere. Sedgwick County v. Bunker, 16 Kan. 498; Putnam County v. Allen County, 1 Ohio St. 322; Lee County v. Phillips County, 46 Ark. 156; Morgan v. Beloit, 7 Wall. 613, 19 L. ed. 203; Laramie County v. Albany County, 92 U. S. 307, 23 L. ed. 552.

In Laramie County v. Albany County, supra, the legislature of the territory of Dakota passed two acts creating the counties of Albany and Carbon out of a portion of the territory of the complainant county, reducing the area of that county more than two thirds; and fully two thirds of the wealth and taxable property previously existing in the old county were withdrawn from its jurisdiction, and its

limits were reduced to less than one third of its former size, without any provision being made in either of said acts that the new counties, or either of them, should assume any proportion of the debts and liabilities which had been incurred for the welfare of the whole before these acts were passed. Payment of the outstanding debts having been made by the complainant county, the present suit was instituted in her behalf to compel the new counties to contribute their just proportion toward such indebtedness. In denying the right of plaintiff to recover, the court said: "The legislature of a state possesses the power to divide counties and towns at their pleasure, and to apportion the common property and the common burdens in such manner as to them may seem reasonable and equitable. Where the. legislature does not prescribe any different regulations, the rule is that the old corporation owns all the public property within its new limits, and is responsible for all debts contracted by it before the act of separation was passed, which debts it must pay, without any claim for contribution from the new subdivision."

In Putnam County v. Allen County, supra, a portion of Putnam county was added to the county of Allen; and, in order to enable Putnam county to retain her capacity to pay off her debt, and to do justice in the premises, the legislature provided as follows: "That the commissioners of the counties of Allen and Putnam shall meet on or before the first Monday of April next, or within sixty days thereafter, and ascertain and determine the amount of the public debt of Putnam county, exclusive of that for the surplus revenue loaned to said county, and the proportion which the value of the taxable lands set off by this act to the county of Allen from the county of Putnam bears to the value of the taxable lands by this act remaining in Putnam county; and hereafter each year, until the public debt aforesaid shall be paid off and discharged, there shall be paid out of the treasury of Allen county, upon the order of the auditor thereof, to the treasurer of Putnam county, a sum which shall bear the same proportion to the amount raised in that year by Putnam county for the payment of the debt aforesaid, as the value of the taxable lands so set off as aforesaid, bears to that of those so as aforesaid remaining in Putnam county; and the same shall be applied to the extinguishment of said debt, and to no other purpose; and it shall be the duty of the commissioners of Allen

county to levy a sufficient tax to raise said sum." Within the time prescribed by the statute, the commissioners of Putnam county met at Kalida, having notified the commissioners of Allen county of the meeting. The commissioners of Allen county failed and refused to attend. The commissioners of Putnam county proceeded to ascertain the debt of Putnam county, and found that it amounted to over $10,000, and, in accordance with the rule laid down in the statute, made a computation of what amount of this debt should be liquidated by Allen county. Allen county claimed that this law was unjust, but the court said: "But whether she was required to pay more than her share we have not the means of accurately ascertaining. Nor is it important in the present controversy; for if the legislature, in the exercise of a constitutional power, were mistaken in judgment, it would not render their act unconstitutional or void." The court further said: "If the amount were fixed in the mode contemplated in the statute, or if it were liquidated by judgment, mandamus would be the proper remedy to compel the auditor to perform the ministerial act of drawing the order, but until the amount is thus liquidated, we think the auditor cannot be compelled to act; the time for his action has not arrived." This was an application for a writ of mandamus against the county auditor. It will be seen from this last case that the county of Burleigh pursued the proper remedy to have the amount due from appellant liquidated by judgment. It will also be noticed in this case that the legislature apportioned the amount to be paid according to the value of the taxable lands, leaving out of account all personal property.

The contention of appellant that the assessed valuation of the railroad lands for the year 1884 should be deducted from the assessed valuation of all property in Burleigh county, and in that portion segregated from Burleigh county and annexed to Kidder county, must be overruled.

We do not think that respondent has been guilty of such laches in the premises that a court of equity will not enforce the respondent's claim. In the case of the United States v. Alexandria, 4 Hughes, 545, 19 Fed. 609, the court says: "But where the obligation is clear, and its essential character has not been affected by the lapse of time, equity will enforce a claim of long standing as readily as one of recent origin;

certainly as between the immediate parties to the transaction. . . . But the parties to the present transaction are, on one side, a government of permanent stability, and on the other, a municipal corporation older than the government. They are not like natural persons, whose relations and obligations are all more or less affected by mere lapse of time."

The amount found by the trial court to be due from appellant to respondent county November 1, 1908, is the sum of $4,073.04 gross, and such finding is in no way challenged by appellant.

The judgment is clearly right, and must be affirmed. All concur.