## CITY OF BEACH v. GOEPFERT.

### No. 12949.

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1945.

Rehearing Denied March 21, 1945.

H. A. Mackoff, of Dickinson, N. D. (John Keohane, of Beach, N. D., on the brief), for appellant.

Alan L. Austin, of Watertown, S. D., for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from a general judgment rendered against the City of Beach, North Dakota, in the sum of $71,304.71, inclusive of interest, in favor of the plaintiff trustee as the holder of special improvement warrants which were issued by the City in the years 1912 to 1916, certain of them (set up in the first cause of action) in payment for the construction of sewers, and the others (set up in the second cause of action) in payment for the construction of water mains in those years. The City denied that it was under any general liability to the plaintiff on account of its issuance of the warrants which were, as shown on their face, payable out of special assessments only, and it also pleaded that the action was barred by the North Dakota six-year statute of limitations.

There was federal jurisdiction by reason of the diversity of citizenship between the trustee, to whom the warrants had been transferred upon an active trust, and the City, and jurisdictional amount was involved. Curb and Gutter District v. Parrish, 8 Cir., 110 F.2d 902. Trial by jury was waived and the court entered judgment upon its findings of fact and conclusions of law. The facts were shown by documentary evidence or by stipulation, and none of the findings is directly assailed.

It appears that the City had authority under the North Dakota statutes to cause the construction of the water mains and the sewers, to assess the cost against the property specially benefitted and to issue warrants payable out of assessment funds in the amounts of the assessments, and that in the issuance of the warrants here involved the City assumed to act pursuant to such authority. The water mains and sewers appear to have been constructed and the amount of the warrants issued corresponded with the cost. But the trial court found in accord with the allegations and prayer of plaintiff's petition, both as to the water and the sewer warrants, that the steps that were taken to establish the special benefits and to levy the assessments as well as those taken to collect the assessment money were not in conformity or in compliance with the statutes, and it concluded that the City "by failing to levy valid and legal assessments and by failing to take proper steps to collect said special assessments" had "negligently breached its contract and statutory duties in connection with" the warrants, and that "the measure of plaintiff's damage * * * is the face amount of the warrants * * * with interest * * * at seven per cent * * * from the dates of the last payment of interest."

In support of its contention that the plaintiff's action was barred by limitations the City points out that the action was not brought and the judgment was not awarded to establish or enforce any liability on the sewer or water assessments or funds, but the action was brought and the judgment was awarded against the City to establish and enforce general liability to pay the damages alleged and found to have accrued to plaintiff by reason of the City's negligent breach of contract and of duty imposed by law. The City's position is that the particular action brought and recovered upon was barred.

The field in which the controversy arises is a very fertile one (more than two hundred cases are cited to us), and many questions are argued, but we have become convinced that the trial court was in error in refusing to sustain the plea of the statute of limitations asserted by the City and that the judgment must be reversed on that ground.

The North Dakota statute requires that an action upon a contract, obligation or liability, express or implied, or an action upon a liability created by statute, other than a penalty or forfeiture, shall be commenced within six years after the cause of action accrued [1] (Comp.Laws N.D.1913, § 7373; § 7375, as amended by Ch. 233 of the Session Laws of 1935), and we think it is clear that the plaintiff presented no cause of action that accrued within the six year period prior to the commencement of his suit.

The reason for that conclusion might well be stated without repeating the evidence on the trial, but in our study of the citations we have found that brevity as to the facts and definition of the action has left the application of some decisions uncertain, and at the cost of space we have appended the trial court's findings.[2]

The suit was commenced on April 27, 1943, and was, as stated, for negligent breaches of contract and statutory duties, and we think the law is clear that the cause of action for such breaches accrued (if at

[1] There are exceptions or special provisions not here relevant.

[2] "(2) That the Plaintiff is now and was at the time of the commencement of this action a resident and citizen of the State of South Dakota; that the defendant, City of Beach, is a municipal corporation duly organized under the laws of the State of North Dakota, located in Golden Valley County, in the Southwestern Division of the District of North Dakota, and as such is a citizen of the State of North Dakota; that the amount in controversy in this action exceeds the sum of $3,000.00, exclusive of interest.

"(3) That on or about September 13, 1912, the City of Beach adopted an Ordinance creating Sewer Improvement District No. 1, comprising substantially all of the territory within the then corporate limits of said City, and on the same date adopted an Ordinance creating Water and Main District No. 1, comprising substantially all of the territory within the then corporate limits of said city, and on or about November 7, 1912, made and executed a contract with Haggart Construction Company for the construction of sewers in the City of Beach on streets and avenues in said city as described on page 2 of the Complaint of the Plaintiff, and on the same date made and executed a contract with Haggart Construction Company for the construction of water main on streets and avenues in said City as described on page 16 of the Complaint of the Plaintiff, and thereafter during the years 1912 and 1913, said sewer and water mains were duly constructed and thereafter duly accepted by the City.

"(4) That during the year 1913 steps were taken to construct eleven separate additional sewers in certain other streets and avenues in said City, as more fully described on page 3 of the Complaint of the Plaintiff, and during the year 1913 eleven separate contracts were entered into with Haggart Construction Company for the construction of said eleven sewers, and thereafter, said sewers were duly constructed and duly accepted by the City; that during the same time, after due proceedings had, the said City took steps to install water mains in certain other streets and avenues in said City as set out on page 17 of the Complaint of the Plaintiff, and thereafter duly entered into seven separate contracts with Haggart Construction Company to install said water mains, and thereafter said water mains were duly constructed and duly accepted by the City; that no separate sewer improvement districts were created for each separate sewer project described in this paragraph, and no separate water improvement districts were created for each separate water main project described in this paragraph.

"(5) That subsequently, and on or about March 10, 1915, the said City amended the Ordinance providing for Sewer Improvement District No. 1 to include Mrs. Richards' First Addition to Beach, North Dakota, and thereafter, in the year 1915, after proceedings duly had, made and executed a contract for the construction of sewer on Blanche Street from Richards' Avenue to Second Street in said City, which said sewer was duly constructed and duly accepted by said City: and on March 10, 1915, the said City amended the Ordinance providing for Water Main District No. 1 to include Mrs. Richards' First Addition to Beach, North Dakota, and thereafter, in the year 1915, after proceedings duly had, made and executed three separate contracts for the construction of water mains on the following streets, in said City, viz.: on Frazer Street from Third Avenue to Noble Avenue; on James Street from Kellogg Avenue to Brinton Avenue, and on Blanche Street from Richards' Avenue to Second Street; and which said three separate water mains were duly constructed and duly accepted by said City.

all), when such breaches of contract or duty occurred.

■ The contract of the City was as expressed in the warrants and implied by its undertaking. It was bound to perform the duties specified in the statutes, including the duty to establish and levy assessments and to take all the steps prescribed in the statutes to collect them, and to pay off the warrants and interest out of the funds provided by the proceeds. But the findings are that every breach of its contract or statutory duty committed by the City, proven and relied on, occurred more than six years before the commencement of this action. Its negligent breach of contract and statutory duty to set up proper districts, to make valid assessments and to properly cer-

"(6) That in order to pay for the contract prices of labor and material used in constructing said sewers, engineering expenses, assessment commission expenses and other incidental expenses, the said City issued warrants of said City in anticipation of the collection of special assessments against the property benefitted by said improvements in the approximate amount of $76,000, said warrants being issued at various dates between December 5, 1912 and May 20, 1915, maturing at various dates up to and including the year 1934; that said warrants were duly issued and delivered to Haggart Construction Co., or bearer, and other parties having lawful claims, or bearer, in the manner and form alleged on pages 4, 5 and 6 of the Complaint of the Plaintiff herein; that in order to pay for the contract prices of the labor and material in constructing said water mains, engineering expense, assessment commission expenses and other incidental expenses, said City duly issued warrants of said City in anticipation of the collection of the special assessments against the property benefitted by said improvements, in the approximate amount of $35,000.00, said warrants being issued at various dates between December 5, 1912 and September 11, 1916, the said warrants maturing at various dates up to and including the year 1926; that said warrants were duly issued and delivered to the Haggart Construction Co., or bearer, and other parties having lawful claims, or bearer, for work in connection with said water main construction, which said warrants were issued in the manner and form as alleged on pages 17 and 18 of the Complaint of the plaintiff herein.

"(7) That of the said sewer warrants so issued and delivered as above described, warrants numbers 1 to 66, 126 to 136, have been paid; that of the warrants so issued and delivered as above described for the water main construction, warrants numbers 1 to 39, numbers 42, 43, 44, 55, 56, and 64, have been paid.

"(8) That shortly after said sewer warrants which now remain unpaid were issued, the same were transferred by the parties receiving the same, for value, and said warrants have been held at various times by numerous different persons; that prior to the transfer to the Plaintiff, hereinafter set out, certain of said unpaid warrants hereinafter described were owned by the persons as herein set out, and said warrants were in the amounts, bear date, maturity date, and interest was paid thereon, as hereinafter set out, viz.: (table omitted).

"(8-A). That the principal amounts of said sewer warrants owned by said persons as above set out, is $19,703.76; that there is now due on said warrants, with simple interest, at the rate of seven per cent per annum to the date hereof, the total sum of $45,951.30; that of the warrants issued in payment for the water main improvements hereinbefore described, the same were all transferred to purchasers for value, shortly after their issuance and said warrants have been held at various times by many different persons; that prior to the transfer to the plaintiff hereinafter set out, certain of said warrants hereinafter described were owned by the persons as herein set out and said warrants were in the amount, bear date, maturity date, and the date to which interest has been paid, all as hereinafter set out, viz.: (table omitted).

"(9) That the total principal amount due upon said water warrants is $9,673.99, and the total amount due thereon with simple interest, at the rate of seven percent per annum to the date hereof, is $25,353.41.

"(10) That each of the warrants hereinbefore described, both as to the sewer warrants and the water warrants have heretofore been duly presented to the City Treasurer of the City, and were not paid by him for want of funds and each of said warrants has been duly registered by the said City Treasurer.

"(11) Between the 19th day of August, 1941, and the 19th day of December, 1942, each of the persons hereinbefore described as being the owner of said sewer warrants and said water warrants duly executed and acknowledged a Trust

484

tify delinquent assessments to the county auditor, occurred long prior to the six year period, and prior to that period practically all of the land subject to delinquent assessments had been bought in by the county for delinquent general taxes which exceeded the value of the land. The court has not found any "negligent breach of contract

Agreement making and constituting the Plaintiff, R. D. Goepfert, as Trustee, and did duly sell, assign and transfer to set over to the said R. D. Goepfert, as Trustee, each and every of the warrants and the accrued interest thereon for the uses and purposes as set out in said Trust Agreement, a full, true and complete copy of which is attached to the Complaint, as Exhibit A, and each of the said owners of said warrants duly transferred and delivered said warrants to the plaintiff as Trustee, and said warrants are, each of them, now in evidence in this case.

"(12) That on or about November 5, 1942, at a regular meeting of the City Council of said City, at which all members of. the Council, the Mayor and City Auditor were present, the said plaintiff duly presented to the said City his claim for principal and interest upon said warrants above described, except sewer warrants numbers 122 and 125, and that said City Council either rejected said claim or took no action thereon; that at the regular meeting of said City Council, in the month of January, 1943, the plaintiff presented his claim against said City to the City Council upon Warrants numbers 122 and 155, and the said claim was either rejected or no action was taken thereon.

"(13) That the plaintiff has, in good faith, through his attorney, attempted to negotiate some sort of a settlement with said City but has been wholly unable to work out any settlement of any kind by reason of the fact that the said City Council and its attorneys contend that the City has no liability upon said warrants except to the extent of special assessments collected.

"(14) That prior to April 18th, 1914, the special assessment commission of said City made and prepared twelve separate special assessment rolls, assessing the various lots and parcels of ground benefitted by the installation of the sewers hereinbefore described and set out on pages 2 and 3 of the Complaint of the Plaintiff, and eight separate special assessment rolls as to the property benefited by the water mains described on pages 16 and 17 of the Complaint of plaintiff; that the total assessments made to pay the warrants issued for the construction of the sewers described in paragraph 2 of the plaintiff's complaint were the same as the warrants issued to pay for said construction; and the total

amount of the assessments for the eleven separate sewers described on page 3 of the complaint of the plaintiff was the same as the amount of the warrants issued for said construction; that the total amount of the assessments made to pay the warrants issued for the construction of the water mains described on page 16 of the complaint of the plaintiff equalled the warrants issued, and the total amount of the seven separate special assessment rolls for the seven separate water mains described on page 17 of the complaint of the plaintiff was the same as the warrants issued; that the said twenty separate special assessment rolls were adopted and confirmed by the special assessment commission on April 18, 1914, and thereafter the said City Council purported and attempted to give notice, stating that the said assessment lists or rolls had been confirmed by the special assessment commission, but that in truth and in fact the said notices of the filing of said special assessment rolls were not given by the City Auditor of said city as required by law; that thereafter, after adjournments, the said City Council purported to confirm said assessments on September 17, 1914; that had the said assessments been duly and properly made, said assessments would have become due and payable, ten days after September 17, 1914; that although the City Auditor of the City of Beach has made diligent search in his office to locate said special assessment rolls, the same have been lost or mislaid and cannot now be found; that the descriptions of the various lots and of the amount of the assessments for sewer and water were copied into a bound book which has been kept in the office of said City Auditor, but the particular assessments applicable to the separate assessment rolls and the warrants issued to pay the expense of said twelve separate improvements as to the sewer projects and the eight separate improvements as to the water projects were not segregated and it is impossible to tell from examination of said record of special assessments in the office of the City Auditor of the City of Beach, which of said assessments belong to the proper fund for the payment of the various warrants issued.

"(15) That on or about August 7, 1916, the special assessment commission of said city made a purported special assessment roll purporting to assess the

and statutory duty" committed by the City within six years before the commencement of the suit. If, therefore, a cause of action accrued to plaintiff on account of such breaches, it accrued more than six years before the commencement of his action and was barred by the statute of limitations. Nothing has occurred within the six year

lots benefited by the construction of the sewer on Blanche Street from Richards' Avenue to Second Street in said City, and on the same date said special assessment commission purported to make three separate special assessment rolls to assess the lots benefited by the construction of water mains on Frazer Street from Third Avenue to Noble Avenue; on James Street from Kellogg Avenue to Brinton Avenue; and on Blanche Street from Richards' Avenue to Second Street; that the said special assessment roll for the construction of sewer above described amounted to a total of $1,342.59; the special assessment roll for the construction of water main on Frazer Street amounted to $519.10; special assessment roll for the construction of water main on James Street amounted to $541.09; and the special assessment roll for the construction of water main on Blanche Street amounted to $1,199.57; that said four special assessment rolls were wholly void in that the same wholly failed to describe the major part of the property subject to the assessments in that in the purported description of the property subject to the special assessments, the block numbers were set out only as to the first lot in each block, and therefore no assessment was made or could be made against the majority of said lots; that the said special assessment commission purported to confirm said four special assessment rolls on August 30, 1916, and the City Council of said City purported and attempted to ratify, confirm and adopt said assessment rolls on October 2, 1916; that in truth and in fact, only one lot in each block was described in said special assessment rolls, and as to the balance said purported assessments were wholly void. That none of the said special assessment rolls gave the names of the owners of the said lots.

"(16) That the said purported special assessments against the property benefited by the sewer improvements were payable in twenty equal annual installments and the said purported special assessments against the property benefited by the water main improvements were payable in ten equal annual installments and although no installment of the sewer and water assessments purported to have been adopted and confirmed by the said special assessment commission and the said City Council

was then due, the said City Auditor of the said City purported to certify to the County Auditor of Golden Valley County, North Dakota, a one-twentieth of the sewer assessments and one-tenth of the water assessments so adopted and confirmed on Sept. 17, 1914; that no installment of said assessments should have been certified to the County Auditor of Golden Valley County, North Dakota, until on or about September 20, 1915.

"(17) That in each of the years 1915 through the year 1934, the City Auditor of said City purported to certify to the County Auditor of Golden Valley County, North Dakota, the lots or parcels of land upon which the installments of said purported special assessments had not yet been paid but that said certifications were so incomplete and so improperly made as not to constitute any proper certification as required by law; that in each of the years 1915 through the year 1923, the said City Auditor of said City purported to certify to the County Auditor the lots or parcels of land upon which the said purported assessments for water had not been paid but that said certifications were so incomplete and improperly made that they failed to constitute any certification as required by law; that said certifications were wholly incomplete and improper in the following particulars:

"(a) That in each and every year from 1915 through the year 1934, both years inclusive, the said purported certification of the delinquent installments of said special assessments wholly failed to designate the purpose of the particular assessments and the funds to which the various installments of said assessments, when collected, would belong, and wholly failed to designate which of the sewer assessments so certified belonged to the thirteen separate funds, for the thirteen separate sewer improvements, and wholly failed to designate which of the assessments so certified, belonged to the eleven separate funds for the improvements for water mains.

"(b) That no certification whatsoever of any of the sewer assessments and water assessments should have been made in the year 1914, because no installment was due prior to the date for certification in the year 1914, which was on September 20, 1914, and therefore, the first installment with proper computation of interest and penalty should have been certified in the year 1915, and

period except as the parties have attempted to negotiate settlement.

■ We think the cases in which holders of unpaid warrants against special assessment funds have sued for damages for breach of contract and statutory duty, as has the plaintiff here, support our conclu-

sion that the plaintiff's cause of action was barred. The general rule of law as to the accrual of causes of action is stated in 34 Am.Jur. 91, Sec. 113:

"* * * There is a clear and wide distinction between the creation of a liability and the accruing of a cause of action there-

on or before September 20, 1915; that therefore, each and every year from 1915 to 1935, the certification of the delinquent installment was wholly incorrect in that the wrong installment and the wrong amount was certified, although if the certifications had been due at the times they were made, then the interest was properly computed.

"(c) That the certifications of the delinquent installments of said special assessments should have been made in each year not later than September 20th, in each of said years, but that the said City failed in any of the years to certify the same until long after the time required by law, more specifically, in the year 1916, the certification was not made until on or after October 20, 1916; that certification in the year 1917 was not made until on or after October 30, 1917, and the certification for the year 1918 was not made until on or after October 21, 1918, and appears to have been filed in the Office of the County Auditor on January 22, 1919; the 1919 certification was not made until on or after October 15, 1919; the 1920 certification was not made until on or after October 27, 1920; that the 1921 certification was not made until on or after September 21, 1921; that the 1922 certification was not made until on or after October 16, 1922; that the 1923 certification was not made until on or after October 18, 1923; that the 1924 certification was not made until on or after November 14, 1924; that the 1925 certification was not made until November 14, 1925; that the 1926 certification was not made until October 28, 1926; that the 1927 certification was not made until October 28, 1927; that the 1928 certification was not made until October 31, 1928; that the 1929 certification was not made until November 1, 1929; that the 1930 certification was not made until October 27, 1930; that the 1931 certification was not made until October 26, 1931; that the 1932 certification was not made until December 3, 1932; that the 1933 certification was not made until October 13, 1933; that the 1934 certification was not made until December 12, 1934.

"(d) That only nine installments of the water assessments for the improve-

ments described in paragraph 2, on pages 16 and 17 of the Complaint of the Plaintiff, were ever certified in any manner or form.

"(e) That the 20th installments of the sewer assessments except the sewer on Blanche Street from Richards Avenue to Second Street described in paragraph 5, on page 3 of the complaint should have been certified in the year 1934, but that the only certification made of sewer assessments in said year was one installment of the assessments for the sewer on said Blanche Street from Richards Avenue to Second Street.

"(f) That in each of the years 1915, 1916, 1917, 1918, 1919, 1920, 1921, 1922, 1923, and as to pages 33 and 56 of the 1928 certification, and as to part of page 63 of the 1933 certification, said City wholly failed, in fact, to certify hundreds of the delinquent installments of said special assessments in that only the lot numbers were given, except as to the first description in each block, and the block number was wholly omitted as to each of the other descriptions, thereby failing to make any certification at all except as to the first lot in each block.

"(g) That in all of said years, the said certifications failed to indicate as to most descriptions in a proper manner, the name of the sub-division in which said lots and blocks belonged;

"(h) That in the years 1926, 1927, 1928, 1929, 1930, 1931, 1932, 1933 and 1934, the said City certified as sewer assessments the entire amount of the original assessment against each of the lots upon which there were delinquent installments with figures appearing in columns headed 'Totals', which figures represented one-twentieth of the principal of the sewer assessments, plus penalty and interest computed at the rate specified by law had the proper installment been certified.

"(i) That no dollar signs were affixed to any of the amounts shown on each of said certifications.

"(18) That in each of the years 1915 through the year 1935, both years inclusive, it was the duty of said City to cause the installments of said special assessments which had not been paid by the property-owners to be sold at the

on. It may be stated as a sound general proposition that a cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time even though, in some jurisdictions, the party is ignorant as to the existence of his rights or the cause of action is fraudulently concealed. As the rule is otherwise expressed, a right of action accrues whenever such a breach of duty or contract has occurred or such a wrong has been sustained, as will give a right to bring and sustain a suit. Conversely, the right to commence an action arises the moment the cause of action accrues. In the absence of a statute to the contrary, the test in each case is whether the party asserting a claim is entitled to maintain an action to enforce it, for no limitation commences to run

---

regular tax sale to the City, and, if not redeemed, to cause tax deed to be issued to the said City within two years thereafter, but that in each of said years the said City wholly failed and neglected to cause said special assessments to be struck off by the County Auditor to the said City, and a certificate of tax sale to be issued therefor to the City, or to secure tax deeds thereto in favor of the City. That each year through the year 1934, excepting the years 1922 and 1923, the County Auditor of Golden Valley County, North Dakota, caused to be spread upon the tax books of Golden Valley County, the installments of the special assessments for sewer and water, which were certified to him by the said City of Beach, in the manner heretofore found, and showed the sewer assessments in one column, with the designation 'sewer' and the water assessments separately, with the designation 'water', without any other designation or separation into sub-divisions of the various sewer funds or water funds, and then added the general taxes assessed against each tract shown and placed the total in a column designated 'total current taxes', and in each year at the time provided by law, sold said lands for the total of the general tax and special assessments and issued only one certificate for each tract covering both general taxes and special assessments, and where there was no private bidder who purchased the property for said taxes and assessments, the same was purchased by Golden Valley County, North Dakota; that in the years 1922 and 1923, the publications of the tax sale notices show that the general taxes and special assessments were advertised separately but for neither of these years does the Auditor's records show any sale to the City of Beach; that the year 1923 was the only year that tax sale certificates were issued to the City of Beach, such certificates having been issued in all other years for all other tax sales to Golden Valley County, North Dakota, including special assessments.

"(19) That there were special assessment items for said sewer and water improvements against approximately 2240 lots in said City of Beach; that although there were many of said lots which went to tax sale in each of the years, 1915 and subsequent years, upon which there were delinquent special assessments for sewer and water improvements, no proceedings were taken to secure tax deeds upon any of such lots until January 1926, and no tax deeds were recorded as to said lots until the year 1928; that in the year, 1926, there were several hundred lots in the said City of Beach, upon which tax deeds were issued to Golden Valley County; that subsequent to the year 1928, there were additional substantial numbers of lots upon which the general tax and special assessments for sewer and water were not paid, and upon which, at later dates, Golden Valley County, North Dakota, has secured, or is in position to secure tax deed; that no tax deeds were ever issued to the City of Beach upon any of said delinquent special assessments; that if all of the special assessments or purported special assessments for sewer and water had been collected there would have been sufficient money obtained with which to pay the outstanding warrants; that taken as a whole, the accumulations of general taxes upon various properties at the time tax deeds were taken equaled or exceeded the actual value of the properties upon which tax deeds were taken and still does so exceed said value; that although thirteen separate and distinct funds should have been created by the said City of Beach for the collections made upon the assessments for sewer upon the thirteen separate projects, and although the said City should have created eleven separate funds for the collections made upon the water assessments, the said City has never maintained more than two funds, one fund for the collections upon the assessments for all of the sewer assessments and one fund for all of the collections upon the water assessments, and all collections from the various assessments for sewer have been commingled in one fund regardless of the property upon which

against any demand until the obligation or demand is due and payable, in the sense that it is defined sufficiently to be capable of enforcement."

See also 34 Am.Jur., 94, Sections 115, 116; and 34 Am.Jur., 126, Section 160, which states:

"It is immaterial whether the conduct out of which the cause of action arises is the breach of an implied contract or the affirmative disregard of some positive duty; in either case, the liability arises immediately on the breach or disregard of duty, and an action to recover the damages, which are the measure of such liability, may be immediately maintained. * * *"

In City of El Paso v. West, 5 Cir., 102 F.2d 927, the suit was brought by holders of special improvement warrants, payable out of funds to be created out of special as-

the said assessment was paid, and all collections on the water assessments have been commingled into one fund regardless of the property upon which the said assessments were paid, and the warrants issued to pay for said separate projects were paid out of the collections of said assessments in the order of their maturity or registration, wholly without regard to whether or not, the funds collected were applicable to the payment of said warrants; that the City has not kept any record whatsoever of the properties upon which the assessments have been paid, and has no record whatsoever that shows upon which properties the funds collected and heretofore paid out should apply, and therefore, it is now impossible to determine to whom the funds now on hand belong and whether the moneys heretofore paid out were paid out to apply upon the proper warrants.

"(20) That by reason of the failure of the City to perform its duties toward the said warrant-holders, practically all of the properties upon which the assessments were not paid have been lost on tax deed to the County.

"(21) That subsequent to the issuance of the warrants aforesaid the statutes of the State of North Dakota relating to the penalties and interest which should be imposed upon taxes and special assessments which were not paid when due were so amended as to reduce the penalties and interest which should be imposed upon and added to delinquent taxes and assessments; that the County officers of the said Golden Valley County, since the enactment of such statutes in cases where special assessments have been delinquent have collected certain of the delinquent special assessments and in the making of such collections have collected penalties and interest imposed in accordance with the Amendatory Acts which prescribed penalty and interest at rates lower than those prevailing at the time said assessments were made and said warrants were issued; that the City and the officers thereof at all times since the enactment of said Amendatory Acts have acquiesced in the said practice of said County officials and have accepted the assessments so collected with said reduced penalties and interest.

"(22) That there is now on hand in said sewer fund only the sum of $1526.-11; that there is now on hand in said water fund only the sum of $463.86, and $109.82 in sewer and water interest fund; that by reason of the continued failures of duty of the said City in all of the particulars hereinbefore found, many thousands of dollars of said special assessments remain unpaid.

"(23) That by reason of the negligent breaches of duty and failures of said City to comply with its contractual and statutory obligations in connection with the said warrants, none of said assessments have been collected except such as were paid by the property owners voluntarily, and the said plaintiff has been damaged by said acts in the sum of $71,304.71."

"(2) That the Defendant, City of Beach, North Dakota, has, in a substantial manner, negligently breached its contract and statutory duties in connection with each of the special assessment warrants set out in the foregoing Findings of Fact by failing to levy valid and legal assessments and by failing to take proper steps to collect said special assessments.

"(3) That the negligent failures on the part of said City to comply with its contractual and statutory obligations in connection with each of said special assessment warrants has resulted in depriving the Plaintiff herein of substantial rights under such warrants and has directly resulted in the damage and detriment of the plaintiff; that the correct measure of plaintiff's damage under the facts of this case is the face amount of the warrants held by the plaintiff with interest on each of said warrants, at the rate of seven per cent per annum, simple interest, from the dates of the last payment of interest upon each of said warrants, and that the plaintiff is entitled to judgment against the said City of Beach, North Dakota, for the sum of $71,304.71, besides the costs and disbursements of this action."

sessments, for recovery of the principal and interest of the warrants for breach of the city's contract and statutory duty to make collections, and recovery was had in the trial court, but on appeal the Fifth Circuit held that the action was barred by the statute of limitations and reversed. The court said, at page 928 of 102 F.2d:

"The limitation begins to run on the accrual of the cause of action. If the City had money in the special fund and the suit were on the promise to pay, the cause of action would arise on the failure to pay at the maturity of the certificate, and the period of limitation would be different. But here the suit is for negligent acts which are claimed to have caused injury by destroying the fund little by little. Each act of negligence thus causing damage gave rise to a cause of action when it occurred. That the certificate holders were not aware of it makes no difference. One may often lose a cause of action by limitation without ever knowing he had it. Laying aside equitable notions of a trust which were not here invoked, the City stood much as an agent to collect, like an attorney at law. That an attorney should allow a claim in his hands to become barred is negligence for which he may be liable (5 Am.Jur. Attorneys at Law §§ 130, 137), but the cause of action arises and limitation begins to run when his negligence results in the barring of the claim, and not when the client finds it out and demands satisfaction."

In Little v. Emmett Irrigation District, 45 Idaho 485, 263 P. 40, 56 A.L.R. 822, a suit by holders of special fund warrants, the court upon consideration of many of the cases up to 1928, held that the causes of action were barred by limitations. The court observed (263 P. at page 43):

"As a general rule, statutes of limitations run in favor of, as well as against, municipalities. * * * Unless a plaintiff can allege either that there are sufficient funds on hand, or that the defendant municipality has collected and wrongly applied funds which should have been devoted to the payment of plaintiff's warrant, or was under a legal duty to so collect such funds, with power and opportunity under the law in the elapsed time so to do, and has neglected to do so, and, as in this case, this has resulted in a breach of contract, he may not be able to state a cause of action; but whenever any one of those conditions has arisen, his cause of action has accrued. Of course, if the holder of a warrant issued under a contract relation has a remedy which he may pursue at the time of its issuance, the statute begins to run then. If he has at that time no remedy, the statute begins to run when his remedy, his cause of action, thereafter accrues, which may be when the fund is raised, or when the statute provides or implies a due date for the warrant, or when by statute a duty is imposed upon the municipality or its officers to levy and collect the fund and sufficient time has elapsed in which the officers have had the statutory opportunity to provide the fund and have failed and neglected to do so."

Although in the City of El Paso case, supra, the action was characterized by the court as one in tort, and the trustee here has contended that his action is on contract, the distinction leads to no different result.

"In many cases they hold that the failure of the municipality to discharge its duty by making the necessary assessment or by its unreasonable delay in collecting and paying over the money, constitutes a breach of the contract or a liability ex delicto giving to the contractor a right to recover his compensation or damages against the municipality generally." Vol. 2, Dillon on Municipal Corporations, 5th Ed., Sec. 826.

It is necessary to distinguish a number of cases cited by the trustee in support of his contention that the court should apply the rule that the statute of limitations does not begin to run against a warrant issued by a municipality, and payable out of a special fund, until the municipality has provided the fund from which it may be paid. The basis for this rule is that the right to sue the fund on the warrant does not accrue until the fund exists. So limited and understood, the rule is clearly not applicable to the present case because here the appellee has abandoned the special fund and seeks to hold the municipality to a general liability. Since the cause of action does not depend upon the present or past existence of money in the fund to pay his warrant, the creation of such fund cannot be a condition precedent to his cause of action. In other words, his cause of action accrued independently of the existence of the fund and the rule applicable to causes of actions accruing by virtue of the existence of the fund has no application here.

In Osage Farmers National Bank v. Hook Special School District, 66 N.D. 196, 263 N.W. 162, the action was to recover

money in the fund on the warrants themselves. The special statute required a call and notice to be mailed to the warrant holders to advise of money in the fund to pay the warrants. The court held the statute of limitations did not run until such notice was given. The cause of action being on the warrants and not accruing until statutory notice concerning the fund was given, the decision is not in point in this case where the cause of action is asserted independently of the existence of the fund or notice thereof.

In Bale v. Floyd, 199 Wash. 503, 91 P. 2d 1025, a property owner brought a suit in equity to quiet title against the dyking district that had issued improvement warrants payable out of the dyke fund, in fact, general obligations of the district. The property owner claimed that the warrant holder's lien was barred by the statute of limitations because he had not, within the six years during which the lien was to remain in force, sought mandamus. The court held that the warrant holder could not thus be deprived of his right to collect on his warrant from the fund whenever there was money in the fund. The court said (91 P.2d at page 1027):

"A cause of action accrues when it becomes a present enforcible demand, when the party owning it is entitled to begin and prosecute an action thereon. It accrues at the moment he has a legal right to maintain an action to enforce it and the statute of limitations is then set in motion."

The court had only to find the one cause of action unbarred to defeat the suit to quiet title and it did not decide that a cause of action by the warrant holder against the district for negligence and breach of duty existed or was unbarred.

In Sanborn County v. Estabrook, 49 S. D. 360, 207 N.W. 164, the court issued a writ of mandamus to compel a township to levy a tax to pay drainage assessments eleven years after the drainage assessment became due and payable, reasoning that the proceeding was not barred because the warrants were not barred by the statute of limitations. Here again, as in Bale v. Floyd, supra, the court needed only the existence of the unbarred action on the warrants against the special fund to sustain its decision and did not consider whether an action for negligence or breach of duty ever existed or was unbarred. Barnes v. Turner, 14 Okl. 284, 78 P. 108, 10 L.R.A.,N.S., 478, 2 Ann.Cas. 391; Duke v.

Turner, 204 U.S. 623, 27 S.Ct. 316, 51 L. Ed. 652, 9 Ann.Cas. 842; Kansas City Southern R. Co. v. First National Bank, 171 Okl. 472, 43 P.2d 713; State v. Ferrell, 105 Mont. 218, 70 P.2d 290; Board of County Commissioners of Oklahoma County v. Board of Finance, 10 Cir., 100 F.2d 766, must be similarly distinguished.

In Nebraska, where the most liberal rule in favor of recovery by special fund warrant holders has been adhered to in suits against municipalities, the question of limitations against such suits was recently reviewed by the Supreme Court in Chaffee v. City of Omaha, Neb., 16 N.W.2d 852, 854. The court recognized that "as a general rule, statutes of limitations run in favor of, as well as against, municipalities," that the time when a particular cause of action accrues depends upon its nature, and that where, as in this case, "the special fund was not necessary to the creation of a cause of action and where such failure to create the fund provided the holder of the warrants with additional remedies for the enforcement of payment of the warrants as general obligations of the city," such cause of action accrues at the time of the breaches relied on and the statute runs from that time. The court further observed that "if the statute of limitations did not start to operate because no cause of action had accrued to plaintiff until within five years prior to the commencement of the action on April 15, 1933, then no cause of action now exists because nothing is shown to have occurred on or after that date which would give rise to a cause of action."

To the extent that the trustee has relied upon Burleigh County v. Kidder County, 20 N.D. 27, 125 N.W. 1063, and the contention that his action is on a specialty rather than either tort or contract, we think that the contentions were sufficiently answered in the opinion in Little v. Emmett Irrigation District, supra, 45 Idaho 485, 263 P. at page 43, 56 A.L.R. 822. The cause of action asserted by Burleigh County against Kidder County was not analogous to that of the plaintiff here. Nor do we discover other North Dakota decisions contrary to our conclusion.

We find that the particular cause of action asserted here by the plaintiff and upon which recovery was awarded was barred by the North Dakota six year statute of limitations.

Reversed and remanded.