**EMICH MOTORS CORPORATION and U. S. Acceptance Corporation, Plaintiffs-Appellants,**

v.

**GENERAL MOTORS CORPORATION and General Motors Acceptance Corporation, Defendants-Appellees.**

No. 11457.

United States Court of Appeals Seventh Circuit.

Jan. 27, 1956.

See also 15 F.R.D. 354.

A. Bradley Eben, Edward Atlas, Chicago, Ill., for appellants.

Walter I. Deffenbaugh, Chicago, Ill., Henry M. Hogan, Detroit, Mich., Henry F. Herbermann, New York City, Ferris E. Hurd, Chicago, Ill., for appellees.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a summary judgment entered by the United States District Court for the Northern District of Illinois, Eastern Division, on March 21, 1955, dismissing the plaintiffs' complaint.

This action was commenced October 16, 1941, when plaintiffs, Emich Motors Corporation, hereinafter referred to as Emich Motors, and U. S. Acceptance Corporation, hereinafter referred to as U. S. Acceptance, filed a complaint for treble damages under the anti-trust laws, 15 U.S.C.A. § 15 et seq., against defendants, General Motors Corporation and General Motors Acceptance Corporation, hereinafter referred to as General Motors and as Acceptance Corporation, respectively.

An amended complaint was filed October 14, 1942. The trial lasted for four months—from October 20, 1947 to February 19, 1948—and resulted in verdicts and judgments for plaintiffs in the sum of $1,236,000.00 and a supplemental judgment in the amount of $257,358.00 for plaintiffs' costs and expenses. On February 24, 1948, after the trial had been completed the plaintiffs filed an amendment to the amended complaint to make the pleadings comply with the evidence.

The plaintiffs' complaint was based on an alleged conspiracy between the defendants and others who were charged with having combined to restrain interstate trade and commerce in Chevrolets and other automobiles manufactured by General Motors. This conspiracy was alleged to have for its purpose the control of the financing of wholesale and retail purchases of such automobiles by compelling dealers to use the financing offered by General Motors' subsidiary, the Acceptance Corporation.

The defendants had been charged with and convicted of this conspiracy in a criminal case in which the judgment was affirmed by this court on May 1, 1941, United States v. General Motors Corporation, 7 Cir., 121 F.2d 376. The judgments of the trial court in the civil case were reversed by this court on March 3, 1950, 7 Cir., 181 F.2d 70. The Supreme Court granted certiorari limited to the use and effect of the criminal conviction as evidence in this case. The errors on which the judgments of the trial court had been reversed by this court consisted of improper rulings on the admission of evidence, erroneous instructions to the jury and the fact that the evidence on the issue of damages was so extremely speculative and conjectural as to furnish no sound basis for the amount allowed. All of these errors convinced this court that the defendants had been prejudiced, in that they were not given a fair opportunity to meet the evidence of the plaintiffs. This court therefore remanded the case for a new trial. The Supreme Court, 340 U.S. 558, 572, 71 S.Ct. 408, 95 L.Ed. 534, remanded the case to this court with directions to this court to modify its judgment to conform with the opinion of the Supreme Court as to the manner in which the judgment in the criminal case should be handled in the instant case by the trial judge. On May 1, 1951, this court issued its mandate pursuant to the opinion and mandate of the Supreme Court, but the mandate still called for a new trial in the District Court.

716

Thereafter, on October 17, 1951, this court in Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 191 F.2d 912, held that personal actions to recover treble damages under the Clayton Act are governed by the Illinois Statute of Limitations, Illinois Revised Statutes 1947, c. 83, § 15, and must be brought within two years after the right of action accrues. The Supreme Court denied certiorari in the Hoskins case on March 3, 1952, 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704.

On December 15, 1952, the defendants filed a motion to amend their answer by filing a sixth defense that: "The several rights of action, if any, set forth in said amended complaint are barred by the statute of limitations in that this action was not commenced within two years after they accrued." In support of this motion in the trial court the defendants pointed out that this court had held in the Hoskins Coal & Dock Corp. v. Truax Traer Coal Co. case that the two year statute of limitations was applicable in such cases; that when defendants prepared their answer to the amended complaint their attorneys knew of two unreported decisions of the United States District Court for the Northern District of Illinois, Eastern Division, which held that the two year statute of limitations did not apply to such actions for treble damages; and that at that time there was no decision of this court or of the Supreme Court holding otherwise.

Plaintiffs filed objections to defendants' motion to amend their answer. Plaintiffs' principal objection was their contention that the defendants had waived the right to plead the statute of limitations and were estopped from pleading it by reason of the fact that they had tried to do so after the filing of their answer to the amended complaint, and only after they had subjected plaintiffs and their attorneys to the necessity and burden of the prolonged trial and of defending appeals from the judgments in plaintiffs'. favor, at an expense to plaintiffs in excess of $23,000.00, an assessment of costs against plaintiffs in the amount of $12,221.80, and the expenditure by plaintiffs' attorneys of several thousand hours of work. Plaintiffs further contended that defendants have waived the right to so amend their answer by reason of their delay of 19 months after the judgment of the District Court in the Hoskins Coal & Dock Corp. v. Truax Traer Coal Co. case and for 14 months after that judgment was affirmed by this court.

Over the plaintiffs' objections the trial court permitted the defendants to amend their answer by adding the defense of the two year statute of limitations.

On October 8, 1954, plaintiffs filed a motion to vacate the order permitting defendants to amend their answer and to strike said plea of the statute of limitations on the grounds that defendants, not having pleaded that defense prior to the first trial, thereby waived the defense for all time, and that it did not lie within the discretion of the District Court to grant leave to defendants to so amend their answer.

After the trial court filed its memorandum opinion holding that plaintiffs' principal claims were barred by the two year statute of limitations, the parties stipulated that plaintiffs' minor claims be dismissed without prejudice to their principal claims. The trial court then entered a summary judgment dismissing the complaint, and from that judgment this appeal is prosecuted.

In this court plaintiffs insist that defendants by their omission to plead the statute of limitations prior to the first trial waived and relinquished that plea for all time, and that it was, therefore, not within the discretion of the District Judge to permit the plea. On this contention plaintiffs direct our attention to Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides, "A party waives all defenses * * * which he does not present * * * in his answer * * *"; and to Rule 8 (c) which provides, "In pleading to a preceding pleading, a party shall set forth affirmatively * * * statute of limitations * * * and any other

matter constituting an avoidance or affirmative defense."

■ On their contention that defendants' waiver of the defense of the statute of limitations was final, plaintiffs rely on several cases which do not support their argument. In Roe v. Sears, Roebuck & Co., 7 Cir., 132 F.2d 829, 832, this court said:

"When defendant moved for summary judgment it had filed an answer, the legal effect of which was a waiver of its defense of the statute of limitations. It could not, therefore, *unless relieved from its default*, revive the defense it had waived. We need not consider when a defendant may be excused from its failure to plead the statute of limitations, and be permitted to amend its answer, because the instant case presents no such question. The defendant herein sought no such relief." (Our emphasis.)

From the above language it seems clear that this court recognized that such a waiver was not final and that under some circumstances a defendant could be relieved in such a case. In Retzer v. Wood, 109 U.S. 185, at page 187, 3 S.Ct. 164, at page 166, 27 L.Ed. 900, also cited by plaintiffs, the Court said:

"It is well settled that * * * a defendant who desires to avail himself of a statute of limitation as a defense must raise the question *either in the pleading, or on the trial, or before judgment*." (Our emphasis.)

Other cases cited by plaintiffs involve attempts of defendants to raise affirmative defenses for the first time on appeal contrary to the general rule that a question cannot be raised on appeal which has not been raised in the trial court. Ashton v. Glaze, 9 Cir., 95 F.2d 427, 429; Oedekerk v. Muncie Gear Works, 7 Cir., 179 F.2d 821.

Plaintiffs also rely on Stewart v. United States, 7 Cir., 199 F.2d 517. That opinion was on a second appeal. In the first appeal, 7 Cir., 186 F.2d 627, 634, this court had said: "It follows from what we have held that plaintiffs are entitled to a judgment, and all that remains is the assessment of plaintiffs' damages." From this language we see that the remand there was not for a new trial but only for the assessment of damages. This court correctly held that it was then too late for the Government to inject into the case by an amended answer a new defense to the action.

In the instant case the plaintiffs have apparently entirely ignored the provisions of Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a), after stating when a party may amend his pleadings "as a matter of course", provides that: "Otherwise a party may amend his pleading only by leave of court * * and leave shall be freely given when justice so requires." Subd. (b) of Rule 15 provides for liberality in permitting the parties to amend their pleadings to conform to the evidence "even after judgment."

In Bowles v. Biberman Bros., 3 Cir., 152 F.2d 700, at the close of the plaintiff's case a motion by the defendant to dismiss the action was granted by the trial court. The Court of Appeals there held that the dismissal was improper and remanded the case for trial. The defendant then asked leave to amend its answer by asserting an affirmative partial defense. The court held, at pages 705–706:

"The question of whether or not the defendant may amend its answer upon remand is one which rests within the discretion of the District Court pursuant to Rule 15(b). * *
* * * * * * *
"In our opinion as amended by the order of December 6, 1945, we stated, *inter alia*, that the defendant, having moved to dismiss the complaint under Rule 41(b), 28 U.S.C.A. following section 723c, 'possesses the right to proceed to its defense.' It was our intention to indicate that the defendant might proceed to any and all defenses open to it. But, as we also stated, the question

of whether or not the defendant may amend its answer upon remand is one which must rest within the discretion of the District Court."

In the recent case of McNaughton v. New York Central Railroad Co., 7 Cir., 220 F.2d 835, 840, this court said, in considering an alleged error of the District Court in refusing to permit the defendant to amend its pleadings:

"We are of the opinion that the court erred in overruling the motion. * * * Under Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., leave to amend must be freely given, commensurate with the requirements of justice, and no proposed amendment to a pleading should be denied unless it appears to a certainty that the moving party 'would not be entitled to any relief under any state of facts which could be. proved in support of its claims.' Peterson Steels v. Seidmon, 7 Cir., 188 F.2d 193, 195. However unlikely it may have seemed that defendant could sustain its defense, it, nevertheless, was entitled to an opportunity to prove it. [Citing authorities.]"

The plaintiffs next argue that even if the granting of defendants' motion to amend their answer by adding the defense of the statute of limitations were within the sound discretion of the trial court, it was an abuse of discretion to grant such an amendment under the facts of the instant case. On this contention the plaintiffs rely strongly on Ferryboatmen's Union of California v. Northwestern Pac. R. Co., 9 Cir., 84 F.2d 773. But there the defendant raised the question of laches for the first time on appeal. It was not pleaded below. In the instant case defendants pleaded the statute of limitations below after the case was remanded for a new trial, a remand made necessary by prejudicial errors which occurred in the first trial, errors for which the plaintiffs must bear at least part of the responsibility. Rule 15(a) does not distinguish between amendments after appeal and remand

and those before appeal. Nor do the decisions make such a distinction. Bowles v. Biberman Bros., 3 Cir., 152 F.2d 700; Guth v. Texas Co., 7 Cir., 155 F.2d 563.

The plaintiffs also argue on this point that defendants' excuse for not having sooner pleaded the two year statute of limitations was insufficient; that defendants were not entitled to rely on two decisions of the United States District Court for the Northern District of Illinois, Eastern Division, which had held that the Illinois five year statute of limitations was applicable to an action for treble damages under the anti-trust laws. It is conceded that there was no decision either of the Supreme Court or of this court holding the two year statute applicable prior to our decision in Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 191 F.2d 912. The Supreme Court denied certiorari in that case on March 3, 1952. Thereafter the defendants filed their motion to amend their answer by adding the defense of the two year statute of limitations. Under such circumstances we cannot say that the action of the trial judge in permitting the defendants to amend their answer was clearly erroneous and therefore amounted to an abuse of discretion.

The final argument made by the appellants on the question of the statute of limitations is that the statute did not begin running until September 1, 1936, the effective date of the cancellation of the franchise, and that, therefore, the action was begun within the two year limitation period. The parties are agreed that if the two year statute of limitations is applicable here the appellants cannot recover for any injuries incurred before May 27, 1936. This action was not originally begun until October 16, 1941, but the Clayton Act, 15 U.S.C.A. § 16, provides that any limitation on civil suits thereunder is tolled during the pendency of any criminal action charging defendant with any of the same acts on which the private right of action depends. General Motors and General Motors Acceptance Corporation

were prosecuted by the United States for the acts that the appellants allege injured them. This suit was filed while that criminal action was pending, so the limitation extends back two years from the commencement of the criminal action. The indictment against General Motors was returned May 27, 1938, thus the statute of limitations bars recovery for actions which accrued prior to May 27, 1936.

There is no argument over the basic facts; only the legal consequences of these facts are in issue. Appellants set September 1, 1936, as the date their action accrued, thus bringing themselves within the two year period; and the appellees insist that the right of action accrued April 7, 1936, thereby barring recovery.

On April 7, 1936, appellant Emich Motors Corporation received the following letter from General Motors:

"Gentlemen:

"Please take notice that the Chevrolet Motor Company elects to cancel and terminate the Selling Agreement entered into with you, dated January 1, 1936, effective three months after the delivery of this notice to you, and in pursuance of the terms of said agreement give you this notice of our intention so to do."

After a consultation between Mr. Emich and Mr. Holler, General Sales Manager of Chevrolet, General Motors by letter dated May 4, 1936, extended the effective date of the cancellation to September 1, 1936, hence the appellants' argument that that was the date when the statute began to run.

■ With a few exceptions not here material, statutes of limitations begin running on the date on which the plaintiff first has the right to bring action. City of Beach v. Goepfert, 8 Cir., 147 F.2d 480, 487. Therefore, our decision hinges upon whether the appellants could have brought this action as soon as Emich Motors received the notice of intention to cancel on April 7, 1936, or were compelled to wait until the cancellation became effective on September 1, 1936. If Emich Motors could have brought action before May 27, 1936, its action is barred. If it could not have brought action until after May 27, the action is not barred.

■ The damages sought by Emich Motors can be divided into four parts: (1) Money lost before the first notice was received because General Motors allegedly filled orders incorrectly in an attempt to force Emich Motors to do business with General Motors Acceptance Corporation. (2) Losses incurred immediately following receipt of the notice of cancellation because of its psychological effect on customers and salesmen. (3) Losses suffered because of failure to receive new cars, parts and accessories for resale. (4) Losses incurred because Emich Motors could no longer hold itself out to the public as an authorized Chevrolet dealer. These four sources of damage are separable, and only those for which the cause of action arose after May 27, 1936, are not barred by the statute of limitations. See Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 170 F.2d 569; H. J. Jaeger Research Laboratories v. Radio Corporation, 3 Cir., 90 F.2d 826.

Obviously, recovery for the damages listed above under number (1) is barred by the statute because they admittedly occurred before May 27, 1936. Appellants do not contest this. Recovery for the damages listed under number (2) is also barred, because they were caused by simply receiving the first notice of cancellation, which admittedly occurred before May 27. The claims to recovery for damages listed under number (4) were dismissed pursuant to stipulation by the parties. Thus, the damages listed under number (3) above are the only ones still in issue.

The District Judge held that under the contract between Emich Motors and General Motors, Emich's *right* to receive new cars terminated upon receipt of the first notice of intention to cancel. This hold-

ing was based on the following clause in the franchise agreement.

"Any cancellation or termination of this agreement shall also operate as a cancellation of all orders for standard motor vehicles, chassis, parts, accessories or service and other equipment *which may not have been shipped prior to receipt of notice of such cancellation or termination by Dealer * * *.*" (Our emphasis.)

It is obvious from the briefs that both parties construed this part of the agreement as meaning that notice of intention to cancel terminated the dealer's right to receive cars. In their brief, at page 7, the appellants said:

"The Chevrolet franchise agreements contained a provision that a cancellation of the agreement shall also operate as a cancellation of all orders for vehicles and parts which may not have been shipped prior to receipt of notice of cancellation by the dealer (R. 49). Notwithstanding this provision, General Motors did the exact opposite, as shown by the record in this Court on the first appeal, and continued fully to supply Emich Motors with motor vehicles, parts and accessories, until after September 1, 1936, the effective date of cancellation."

The appellants do not argue here for any other construction of the contract.

The argument made by the appellants is that General Motors continued to send Emich Motors cars as a matter of grace until September 1, 1936, and therefore the real injury to Emich did not occur until delivery of new cars was actually stopped. The District Court was correct in discarding this contention. If the notice received on April 7, 1936, terminated Emich's contract right to receive cars, General Motors could not prevent its bringing action at that time for the unlawful breach. And if Emich Motors could have brought action at that time, then the statute also began running at that time. Furthermore, the trial judge did not find that Emich Motors did receive cars after receiving notice of cancellation. The evidence shows only that cars were sold after notice was received but it does not establish whether they were received by Emich Motors after notice was given or were simply held in stock from prior deliveries.

Appellant U. S. Acceptance Corporation's only function was to finance cars sold by Emich Motors. Any injury that was inflicted upon it was done by affecting Emich Motors' ability to sell cars. In their brief the appellants do not discuss, separately, the damages suffered by U. S. Acceptance but simply say at the end that: "The arguments we have advanced above with respect to plaintiff, Emich Motors Corporation, apply with equal force to the plaintiff, United States Acceptance Corporation * * *." We take it, therefore, that appellants argue that the damages allegedly recoverable by U. S. Acceptance Corporation did not accrue until September 1, 1936. What we have said above in regard to Emich Motors' cause of action, however, makes it clear that this is not necessarily true. The evidence shows that Emich Motors suffered loss of sales before September 1. The trial court held that a right of action accrued to U. S. Acceptance "whenever the curtailment of deliveries to the dealerships by General Motors substantially impaired its activities * * *," and that "Any loss of profits or other damages which resulted from such curtailment before May 27, 1936, may not be recovered in view of the bar of the two year statute." The court further held that since the motion for summary judgment did not include facts showing that all such injuries to U. S. Acceptance occurred before May 27, 1936, it would grant summary judgment against this plaintiff only as to those injuries that could subsequently be shown to have occurred before May 27, 1936. The parties then stipulated to dismiss as to all claims that the trial judge had held were not barred by the statute of limitations. The appellants.

do not contest before us the trial court's holding that U. S. Acceptance Corporation's damages are separable and that those accruing before May 27, 1936, are barred by the statute. And since they have stipulated to dismiss all other claims of that plaintiff, there is nothing more for us to decide with regard to the U. S. Acceptance Corporation.

The appellants' final argument is that the lower court could not properly have granted summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., because there existed a contested issue of fact as to whether or not Emich Motors continued to receive cars between the date it received notice of cancellation and September 1, 1936. This was not a material issue of fact because, as we have already said, the trial court properly held that, even if Emich Motors did continue to receive cars until September 1, 1936, the cause of action accrued and the statute began running on April 7, 1936.

There appearing no error in the court below, the judgment of the District Court is

Affirmed.