**SCHOKBETON PRODUCTS CORP.**

v.

**EXPOSAIC INDUSTRIES, INC.,** former-
ly Mabie Bell Exposaic, Inc.

**Civ. A. No. 886.**

United States District Court
N. D. Georgia,.
Newnan Division.

Dec. 31, 1969.

Arnold, Golden & Gregory, Atlanta,
Ga., for plaintiff.

Womble, Carlyle, Sandridge & Rice,
Winston-Salem, N.C., Sanders, Mottola
& Haugen, Newnan, Ga., B. B. Olive,
Durham, N.C.., for defendant.

### ORDER

ALBERT J. HENDERSON, Jr., Dis-
trict Judge.

In this breach of contract suit, plain-
tiff has moved to dismiss defendant's
counterclaim, alleging (1) that it has
failed to state a claim, (2) that the
claim is barred by the statute of limita-
tions, and (3) that the defendant is in
pari delicto with plaintiff and, there-
fore, cannot assert a counterclaim based
upon the alleged illegality of the con-
tract. The court finds all grounds to be
without merit.

Plaintiff and defendant entered into a
contract, pursuant to which defendant
was to utilize plaintiff's secret, patented
concrete manufacturing process, in addi-
tion to receiving technical assistance,
the use of the name of the process, etc.
In return, plaintiff was to receive royal-
ties on defendant's sales. A disagree-
ment arose between the parties, and, in
due time, defendant exercised its con-
tractual right to terminate the contract
within 90 days. At this juncture, plain-
tiff served notice that it intended to au-
dit defendant's sales, and consequently
demanded certain payments of royalties,
"at least $110,262.00". Defendant re-
fused to pay, and plaintiff sued. De-

fendant counterclaimed, in essence alleging that plaintiff's patent had been obtained fraudulently. As a result, alleged the defendant, plaintiff's territorial restrictions and sales of unpatented products in connection with the use of the patented process, amounted to unlawful territorial restrictions, and tying agreements, in violation of the antitrust laws of the United States. Further, defendant alleged that at the time of its entry into the contract, the predecessor in interest of the plaintiff had become the owner of approximately 62% of the defendant's voting stock and, therefore, plaintiff's fraudulent and unlawful actions had amounted to a breach of fiduciary duty to the defendant, and to its other shareholders. As a result of all this, defendant alleged that plaintiff owed it all of the royalties which it had paid pursuant to the contract, $171,266.-00. Trebled, under the antitrust laws of the United States, these damages amounted to $513,798.00.

Thus, three questions are presented to the court: (1) does defendant's counterclaim fail to state a claim for which relief can be granted? (2) is defendant's action barred by the statute of limitations? (3) is defendant barred from bringing its counterclaim because it was in pari delicto with plaintiff, *i.e.*, because it participated in and received benefits from the contract supposedly constituting a violation of the antitrust laws?

■ The portion of plaintiff's brief devoted to defendant's alleged failure to state a counterclaim against it is very brief. Plaintiff cites only Automatic Radio Manufacturing Company v. Hazeltine Research, Inc., 339 U.S. 827, 70 S. Ct. 894, 94 L.Ed. 1312 (1950). In the *Automatic Radio* case, the Court held that a licensee such as Exposaic Industries, Inc. (formerly Mabie Bell Exposaic, Inc.), in an action for royalties against it, might not challenge the validity of the licensed patent. The rationale for this holding was that, because the licensee had contracted to use the patent, it was obligated to pay for it whether it

used the patent or not. Essentially, it was estopped from contesting the payment of royalties regardless of its contention that the licensor was demanding royalties for the use of an idea which was in reality a part of the public domain. 339 U.S. at 836, 70 S.Ct. 894, 94 L.Ed. at 1320. However, on June 16, 1969, in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610, (1969) the Supreme Court stated:

We are satisfied that Automatic Radio Co. v. Hazeltine Research, Inc., supra, itself the product of a clouded history, should no longer be regarded as sound law in respect of its "estoppel" holding, and that holding is now overruled.

89 S.Ct. at 1911, 23 L.Ed. at 623. Thus, the licensee, Exposaic Industries, may challenge the validity of the licensor's patent, under the circumstances of this case. Accordingly, the defendant does state a counterclaim for which relief could be granted.

Therefore, the motion is denied as to this ground.

■ Plaintiff also moves to dismiss on the ground that the contract, executed as of May 4, 1964, was the last overt act from which the defendant suffered damage. Therefore, plaintiff argues, the appropriate statute of limitations, § 4B of the Clayton Act, 15 U.S.C. § 15b, providing a statute of limitation for claims sought to be enforced under § 4 of that Act, bars forever the defendant's cause of action.

In The Hanover Shoe, Inc. v. United Shoe Machinery Corporation, 392 U.S. 481, 502, 88 S.Ct. 2224, 20 L.Ed.2d 1231, 1246 (1968), the Supreme Court held that United Shoe had refused to deal, in violation of the antitrust laws, when it had refused to sell its machinery to the plaintiff, but had required the plaintiff to lease machinery at a higher price. The Court stated, in pertinent part:

We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. Cf. Emich Motors Corp. v.

General Motors Corp., 229 F.2d 714, [59 A.L.R.2d 159] (CA 7th Cir. 1956), upon which United relies. Rather, we are dealing with conduct which constituted a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm on Hanover. Although Hanover could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955.

392 U.S. at 502 n. 15, 88 S.Ct. at 2236, 20 L.Ed.2d at 1246 n. 15. Accordingly, the Court stated that the plaintiff was entitled to damages for the entire period permitted by the applicable statute of limitations.

To demonstrate such continuing conduct by the plaintiff as was perpetrated by United Shoe, defendant in this case points to exhibits G, H and J, attached to plaintiff's complaint. Exhibit G purports to be a copy of a letter, dated October 6, 1967, from plaintiff to defendant, proposing a modification to the written contract, with the approval of the defendant on page 2 of the letter. Exhibit H purports to be a copy of a letter from plaintiff to defendant, dated November 17, 1967, which refers to defendant's failure to comply with a certain portion of the May 4, 1964, agreement between the parties. In the letter, plaintiff states that it is waiving the requirement for defendant to have a second plant in operation by June 1, 1965, and a third plant in operation by July 1, 1966, but reminds defendant that " * * * all concrete products manufactured and sold * * * are subject to royalties, in accordance with the Agreement, at the Atlanta plant commencing January 1, 1965, and all other plants commencing July 1, 1966." Exhibit J purports to be a copy of a letter from plaintiff to defendant, dated February 20, 1968, in which plaintiff acknowledges defendant's request to cancel its contract with plaintiff. Plaintiff recites in the letter that it does not consider it advantageous to modify the agreement as currently in effect, and complies with defendant's request to cancel the con-

tract as of April 9, 1968. It further states that plaintiff will audit the sales of defendant to determine the royalties due it under the contract. Finally, the letter reminds the defendant that it will no longer be entitled to the use of " * * * the name of Schokbeton, trademarks, know-how, Schoktables and other rights, licenses and privileges granted." Plaintiff also called defendant's attention to its agreement not to sell, lease, or lose the Schoktables in its possession without plaintiff's written approval. Considering this correspondence, the court is of the opinion that plaintiff's course of conduct was such as the Supreme Court referred to in *Hanover Shoe.*

The court's decision is fortified by the case of Hoopes v. Union Oil Company of California, 374 F.2d 480, 486 (9th Cir. 1967). That court stated, in pertinent part:

> The alleged antitrust violation consists of Union's entire course of conduct directed to the establishment and maintenance of exclusive dealing arrangements with service station outlets in Fairbanks and other Alaska areas. Acts of Union in furtherance of this purpose, which appellants contend caused them injury and damage, included Union's efforts to prevent appellants from selling or leasing their station free of the exclusive dealing condition. These acts continued until the complaint was filed and thereafter. Thus, appellants' action is not barred even if the invasion of their interests is considered to have been episodic rather than continuous. See generally Steiner v. 20th Century-Fox Film Corp., 232 F.2d 190, 194–195 (9th Cir. 1956); Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725, 731–732 (8th Cir. 1964).

This is not a case in which a continuing *conspiracy* is alleged to be causing continuing damages, as was Steiner v. 20th Century-Fox Film Corp., 232 F. 2d 190, 195 (9th Cir. 1956). Rather, this is a case involving an alleged direct violation of the antitrust laws, by the

 

plaintiff against defendant. However, as the *Hoopes* case demonstrates, the distinction here between episodic and continuous damages is immaterial, because *overt acts were perpetrated within the period of the statute*. *See* The Poster Exchange, Inc. v. National Screen Service Corporation, 306 F.Supp. 491, N.D.Ga. (order entered August 27, 1969).

Therefore, the motion is denied as to the statute of limitations.

■ Plaintiff seeks to dismiss on the basis that defendant sought its contract with it, entered into the contract, and participated in the benefits of the contract. For these reasons, it argues that, if the plaintiff's conduct is in violation of the antitrust laws, defendant's conduct places it in pari delicto with plaintiff. Accordingly, defendant would be barred from maintaining this counterclaim against plaintiff.

In the case of Perma Life Mufflers, Inc. v. International Parts Corporation, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), the Supreme Court rejected the idea that muffler dealers who enthusiastically sought franchises were barred by their conduct from recovery under the antitrust laws. The Court stated, in pertinent part:

> The possible beneficial byproducts of a restriction from a plaintiff's point of view can of course be taken into consideration in computing damages, but once it is shown that the plaintiff did not aggressively support and further the monopolistic scheme as a necessary part and parcel of it, his understandable attempts to make the best of a bad situation should not be a ground for completely denying him the right to recover which the antitrust acts give him. *We therefore hold that the doctrine of in pari delicto, with its complex scope, contents, and effects; is not to be recognized as a defense to an antitrust action.* (emphasis added).

392 U.S. at 140, 88 S.Ct. at 1985, 20 L.Ed.2d at 991. Accordingly, there is no merit to plaintiff's contention that the doctrine of in pari delicto bars the defendant from bringing its counterclaim.

Therefore, the motion to dismiss is denied.